UNDERWRITERS FIRE ASSOCIATION V. PALMER & CO.

Decided May 13, 1903.

**1.—Fire Insurance—Iron Safe Clause.**

It was a compliance with the iron safe clause that the insured kept his books in an iron safe of the kind, understood to be fireproof, and believed by him to be so, although the books were destroyed by fire while in the safe.

**2.—Same—Ownership of Property—False Statements.**

Where the policy provided that it should be void if the property was not owned in fee by the insured, or in case of fraud or false swearing by the insured, and a deed of the property had been made to the insured, but all the vendor's lien notes, though due, had not been paid, and those facts were stated at the time to the insurance agent, a requested charge to find for the insurance company if the insured made false statements concerning the subject of

the insurance was properly qualified by the addition, "and known to be false at the time."

Appeal from the District Court of San Jacinto. Tried below before Hon. L. B. Hightower.

*Harry P. Lawther* and *P. E. McMahon,* for appellant.

*Robinson & Hansbro* and *McKinney & Hill,* for appellees.

NEILL, ASSOCIATE JUSTICE.—Appellees, a partnership under the name of Palmer & Co., composed of J. M. Palmer, Jr., N. C. Palmer and B. A. Zeigler, brought this suit on a policy of fire insurance issued in favor of the firm by the appellant on September 24, 1900, covering a one-story shingle-roof building situated on lot No. 4, block 7, of the town of Oakhurst, San Jacinto County, with a stock of merchandise in the building, office furniture and fixtures, the insurance being $300 for the building, $50 for the office furniture and fixtures, and $900 for the stock of merchandise.

The policy described the building as situated on lot 7, block 4. This description is alleged as a mistake, and that the building and property really insured was situated on lot 4, block 7; which was the one intended by the parties to be insured.

It is alleged that on the 25th day of October, 1900, while the policy was in force, the property described therein was totally consumed by fire. The policy contained the usual "iron safe clause," as well as one vitiating it in case of any fraud or false swearing by the insured touching any matter relating to the insurance or subject thereof, whether before or after the loss. It also provides that if the interest of the insured be other than unconditional and sole ownership; or if the subject of insurance be a building on ground not owned by the insured in fee simple, the policy will be void.

The defenses plead are, (1) the failure of the insured to comply with the iron safe clause; (2) that appellees were not the sole and unconditional owners in fee simple of the building at the date of the insurance policy, and (3) that they did not truly state their interest described in the policy, and had been guilty of false swearing touching matter relative to the insurance.

Appellees, by supplemental petition, denied the defensive matters plead, and averred that appellant, before the issuance of the policy, was fully informed of outstanding unpaid vendors' lien notes upon the lot and building.

The uncontradicted evidence shows that the building insured, and the fixtures therein and the stock of merchandise in the building covered by the policy were totally destroyed by fire on the 26th day of October, 1900. The only issues of fact were, (1) as to whether there was a breach of the iron safe clause; (2) whether there was fraud on the part of the appellees in representing that J. M. Palmer, Jr., and B. A. Zieg-

ler constituted the firm of Palmer & Co., and concealing the fact that N. C. Palmer was one of its members, and fraudulently stating that the property, real and personal, covered by the policy belonged to J. M. Palmer, Jr., and B. A. Ziegler. These issues were all submitted to the jury, who found on them in favor of the appellees, and from an examination and consideration of the statement of facts, we have concluded that the evidence is reasonably sufficient to sustain the verdict.

*Conclusions of Law.*—The appellant requested the court to instruct the jury to find in its favor in the event that certain inventories and books kept by plaintiffs were not produced and exhibited to appellant for examination after the fire. The failure of the court to give the charge, without qualification, is assigned as error. The inventories, books, etc., referred to in the charge could not be produced or exhibited for the reason that they were destroyed, while locked in an iron safe in which they were kept, by the fire at the time the building was burned. From the fact that they were so destroyed, the appellant contends that they were not kept in a fireproof safe within the meaning of the iron safe clause contained in the policy.

The same contention under similar facts was made in Knoxville Fire Ins. Co. v. Hird, 4 Texas Civ. App., 82, 23 S. W. Rep., 393, in which it was said by Mr. Justice Head: "By a 'fireproof safe,' within the meaning of an insurance policy such as this, we think is intended a safe constructed of incombustible material for the purpose of resisting fire, and commonly regarded as sufficient for this purpose. In other words, it is an article of furniture, the distinctive name of which well conveys the idea that the purpose for which it was intended is the preservation of its contents from the effects of fire. If the safe in which Meyers kept his books, etc., was constructed for this purpose, and was commonly known as a fireproof safe among those acquainted with such articles, we think it was a fireproof safe within the meaning of the policy, though it may have proven insufficient in this instance, he not being negligent in its selection. If he kept his books in a place commonly known as a fireproof safe, he complying with the letter of that part of his contract; and if he acted in good faith, and was not guilty of negligence in making the selection, he complied with its spirit."

Again, in Sneed v. British Am. Assur. Co., 18 So. Rep., 928, in which the same question was under consideration, it is said: "The words 'fireproof safe' in this policy, in view of the situation of the small country merchant and his needs for the employment of an iron safe, can only mean the usual fireproof safe used by the country generally,—a safe composed of incombustible material and fitted to protect to the usual extent and in the ordinary way papers deposited therein, and not that rare and costly structure, if indeed such there be, which is capable of successfully withstanding the action of fire altogether, and of preserving its contents from harm absolutely." Mr. Ziegler, one of plaintiffs,

32 Civil—29.

testified: "The safe was sold to us for a fireproof safe, and we thought it was a fireproof safe."

The court gave the requested charge with this qualification: "Given with the remark that if the plaintiff kept a fireproof safe, that is, one of a kind generally termed and understood to be fireproof, and believed by plaintiff to be fireproof; and kept the papers and cash book mentioned in said safe, and that the same was destroyed by fire; and that the so keeping of the said papers and cash book and the other books not lost by the fire,—the ledger was a substantial compliance with the stipulations of the covenant of warranty in this respect, and there was no breach of the same in such case, if you so find."

The appellant also requested the following special charge: "If you believe from the evidence that plaintiff failed to keep a fireproof safe, you will find for defendant." This charge was given with the qualification, "that if the safe kept by plaintiff was of the kind and character generally termed and understood to be fireproof, and so believed by plaintiffs, then in regard to this matter there was compliance with the covenant of warranty."

The quotations we have made from the authorities cited fully sustain the trial court in its qualification of the requested instruction.

The court gave, at appellant's request, the following instruction to the jury: "You are instructed that if you believe from the evidence that plaintiffs, through J. M. Palmer, Jr., either before or after the loss, made sworn statements to defendant, which were false, concerning the insurance or the subject thereof, you will find for the defendant," with this qualification: "Given with the remark, after the word 'false' add the words 'and known by said Palmer to be false at the time he made such statements, if any.'" It is complained that the court qualified the charge.

This charge was evidently intended to apply to appellant's contention that there were misrepresentations when the policy was issued, as well as when proof of loss was made, of the title to the land on which the house was situated. These are the facts relating to this matter: When the policy was issued, Palmer & Co. had bought the house and lot, giving vendor's lien notes to their vendor for part of the purchase money. J. D. Cunningham represented appellant in the issuance of the policy, and had full authority to take applications for insurance, and issue the policies for appellant. He was told by members of the firm at the time the policy was issued that they had bought the house and lot on time, and paid a part of the purchase money, and would not be able to pay the balance before the 1st of the following January. The deed had been made to appellees to the lot and house when the insurance was effected, but all the purchase money, though due, had not been paid, and Mr. Palmer knew these facts. In view of them it was proper for the court to qualify the charge, for indeed, under the facts, there was no fraud. Nor did the court err in refusing to give charges numbers 4 and 5 requested by appellants, which relate to the same matter.

None of the assignments which complain of the court's charge is well taken. It, together with the special charges given, is the correct enunciation of the law applicable to the case. There is no error assigned requiring a reversal of the judgment, and it is affirmed.

*Affirmed.*