## ALBERT CHIMENE ET AL. V. JAMES A. BAKER ET AL.

### Decided May 27, 1903.

**1.—Assignment of Error.**

Where an assignment of error complains of the overruling of numerous special exceptions, no particular errors being indicated, it will not be considered.

**2.—Same—Statement Necessary.**

An assignment of error will not be considered where no statement accompanies it as required by the rules.

**3.—City Ordinance—"Fireproof" Buildings.**

A city ordinance forbidding the erection of buildings made of combustible materials, or of any material not fireproof, does not require that the buildings erected shall be absolutely fireproof, but only that they be such as will resist ordinary fires.

**4.—Same—Unreasonableness—Legislative Power.**

A city ordinance forbidding the erection of buildings out of combustible materials, when passed under legislative power granted to the city by legislative charter in definite and precise terms, can not be set aside as unreasonable.

**5.—Same—Defining "Fireproof" and "Combustible."**

A city ordinance forbidding the erection of buildings constructed of combustible materials, or any material not fireproof, is not uncertain and obscure because it does not define "combustible" and "fireproof."

**6.—Injunction—Enjoining Erection of Building.**

Where, in violation of a city ordinance, a building is being erected of combustible materials within established fire limits, the owner of an adjacent building, upon showing that such erection will cause special and irreparable injury to his property for which he has no adequate remedy at law, may restrain such erection by injunction.

**7.—Same—Defense—Abating Nuisance.**

In such action for injunction an answer setting up the failure and refusal of the city to abate the nuisance, as a justification for the erection of the building, presents no defense, nor was it a defense that other buildings in the vicinity were not constructed of proper materials.

**8.—Same.**

In such action evidence that the mayor had authorized the erection of the building and that other buildings in the vicinity were not fireproof, was properly excluded.

**9.—Bills of Exception—Exclusion of Evidence.**

The appellate court will not consider bills of exception to the trial court's refusal to permit witnesses to answer certain questions where they do not show what the answers would have been.

**10.—Trial—Verdict and Judgment—Harmless Error.**

Where in an action for injunction the jury find for plaintiffs in disregard of an instruction to find against one of them, the defendants can not complain that the court conformed the judgment to what must have been the intention of the jury and refused to render judgment for such defendant.

**11.—Verdict—Impeachment by Jurors.**

The impeachment of verdicts by the statements of jurors after the trial will not be allowed.

Appeal from the District Court of Harris. Tried below before Hon. Wm. H. Wilson.

*Jas. A. Breeding,* for appellants.

*Baker, Botts, Baker & Lovett* and *Ford, Stone & Ford,* for appellees.

FLY, ASSOCIATE JUSTICE.—This suit was instituted by James A. Baker, R. S. Lovett, L. M. Rich, W. L. Foley and A. L. Abrahams and his wife, Carrie B. Abrahams, against Albert Chimene and A. Pennington, to restrain them from the erection of a building being constructed of combustible material within the fire limits of the city of Houston, near houses owned by them. A trial was had by jury, which resulted in a verdict and judgment for appellees.

The evidence established that appellants had begun the construction of a storehouse with combustible material and material not fireproof beside and in close proximity to storehouses owned by the above mentioned plaintiffs, except W. L. Foley. The houses mentioned are within the limits established by the city of Houston wherein it is made unlawful, by an ordinance, to build or erect houses of combustible material or material that is not fireproof. The erection of the house by appellants would greatly depreciate the value of the property owned by appellees.

The second and third assignments of error complain of the action of the court in overruling numerous special exceptions, which are numbered and copied. No particular errors are indicated. It has been so often held that such assignments of error will not be considered that it would seem that they would not be so prepared. Keown v. Love, 65 Texas, 152; Railway v. Leak, 64 Texas, 654; Yoe v. Montgomery, 68 Texas, 338; Paschal v. Owen, 77 Texas, 583.

Through the first assignment of error appellants complain of the overruling of a general demurrer which goes to the very foundation of the suit, and presents for review the vital questions connected with actions of this character.

It was alleged in the petition that under the authority granted it by its charter, the city of Houston had passed ordinances in 1897 and 1899 prescribing fire limits in which the erection or placing of any building of combustible or any material not fireproof within certain limits was prohibited, and penalties fixed for violations of the same; that appellants were constructing a building within said limits of wood and other materials not fireproof and incombustible, in immediate contact with the building and improvements of appellees. The petition proceeds:

"Plaintiffs further show that the erection of said building, if the same is permitted to be erected, will be a nuisance, and will subject the valuable buildings and improvements of plaintiffs' property to imminent danger of destruction by fire, and will increase the fire risk on said buildings and increase the cost of insurance on the same against loss by fire; that it will decrease the value of plaintiffs' property and render the same less salable; diminish the income therefrom, and render the use thereof unsafe and uncomfortable; will increase the cost of insurance on stocks of goods or other property placed therein, thereby and other-

wise making the same less desirable and valuable as rent property; that the front end of the defendant's building, as is shown by the frame work thereof, has no support except wooden posts, and plaintiffs are informed and believe that in case of a fire in said building it would be unsafe for firemen or others wishing to extinguish it to enter said building on account of the liability of said posts to burn and give way and cause said building to fall, and on account of other defects in said building rendering the same liable to fall in case of fire. Plaintiffs further say that the injuries to their property and to plaintiffs by the erection of said building would be permanent, continuous and irreparable, and that they are entirely without adequate remedy at law."

It was also alleged that they had applied to the mayor, city council and chief of police of the city of Houston to enforce the ordinance, but they had refused to do so.

It is the contention of appellants that the ordinance is unreasonable in prescribing that none but buildings made of "fireproof" or "incombustible" materials should be constructed within the fire limits, and reason and experience teaching that no such material can be obtained that is suitable for the construction of buildings, it is practically a prohibition of the erection of houses within such limits. The terms "fireproof" and "combustible materials," used in the charter and ordinances, should not be given a literal construction, but a liberal and reasonable one, and the meaning assigned to them in the ordinary and common acceptation of the terms. Experience has shown that during great conflagrations, such as swept the cities of Chicago and Boston a number of years ago, buildings of granite, marble and steel crumbled into dust before the intense heat and met with absolute destruction. And yet those buildings were known and accepted as being composed of incombustible or fireproof materials.

The term "fireproof" in insurance cases, where used in connection with safes in which books and inventories are to be kept, has been defined as being of materials that will usually resist the action of fires, and not those that will successfully withstand fires under all circumstances. Insurance Co. v. Hird, 4 Texas Civ. App., 82, 23 S. W. Rep., 393; Insurance Co. v. Palmer, ante, p. —, 7 S. W. Rep., 603; Sneed v. Assurance Co. (Miss.), 18 So. Rep., 928. As said by the Supreme Court of Mississippi in the last cited case: "To impart to the words 'fireproof safe' such signification as would require a safe incapable of injury by fire, to itself or its contents, or one which by the action of any fires could not be rendered useless, as a safe, and whose contents, under any combination of circumstances should and could never be destroyed by the intensity of heat to which the safe and its contents might be exposed, would be to require of the insured, in the vast majority of insurance cases, that which could not have been in the contemplation of the parties in entering into the contract of insurance." The words "fireproof" and "incombustible materials" are often used in connection with houses

that are not absolutely proof against fires, but are intended as referring to houses built of brick, stone, iron or other material on the outside so as to form barriers that will resist the action of ordinary fires.

The ordinance of which complaint is made is authorized by the charter of the city of Houston, which empowers the city council to "prohibit the erection, building, placing, moving or repairing of wooden buildings within such limits in said city as they may designate and prescribe; * * * and may direct, require and prescribe that all buildings within the limits so designated and prescribed shall be made or constructed of fireproof materials." The ordinance uses the words "combustible material or any material not fireproof." The words are practically the same used by the Legislature in the special charter of 1897 granted to the city of Houston.

To inquire into the reasonableness of the ordinance would be to inquire into and attack the reasonableness of a law enacted by the Legislature of the State. The ordinance is not dependent for its vitality on some power incidental to some general power granted to the city, but it follows the language of the legislative grant for that specific purpose almost to the letter.

After the power of courts to sit in judgment on the reasonableness of city ordinances resting for their authority on some general grant of power had been conceded, Judge Dillon says: "Where the Legislature in terms confers upon a municipal corporation the power to pass ordinances of a specified and defined character, if the power thus delegated be not in conflict with the Constitution, an ordinance passed pursuant thereto can not be impeached as invalid because it would have been regarded as unreasonable if it had been passed under the incidental power of the corporation, or under a grant of power general in its nature." Dill. Mun. Corp., sec. 328. The text is supported by numerous authorities.

In the case of A Coal Float v. City of Jeffersonville (Ind.), 13 N. E. Rep., 115, it is said: "While the reasonableness of an ordinance is a question of law for the decision of the court, an ordinance can not be held to be unreasonable which is expressly authorized by the Legislature. The power of a court to declare an ordinance unreasonable, and therefore void, is practically restricted to cases in which the Legislature has enacted nothing on the subject matter of the ordinance, and consequently to cases in which the ordinance was passed under the supposed incidental power of the corporation merely." That case has been followed a number of times in Indiana. Railway v. Harrington, 30 N. E. Rep., 37; Champer v. Greencastle, 35 N. E. Rep., 14; Rund v. Fowler, 41 N. E. Rep., 456; Beiling v. Evansville, 42 N. E. Rep., 621; Shea v. Muncie, 46 N. E. Rep., 138.

In the case of State v. Mott (N. J.), 38 Atl. Rep., 857, it was said: "When an ordinance has been passed by a municipal body, under legislative power, which is granted in definite and precise terms, such ordinance can not be set aside as unreasonable."

Even if the strictest interpretation be placed upon the words "fireproof" and "incombustible material," it can not be claimed that the Legislature of the State has not the power to delegate to cities the authority to prohibit within certain limits buildings of that class of materials. Even if the reasonableness of such legislation could be the subject of inquiry, it was one to be inquired into in this case in the light of the evidence, and that tended to establish that absolutely fireproof buildings could be erected.

This action was instituted not for the enforcement of an ordinance of a city, but to protect property rights threatened by the intended violation of the ordinance. A private right has been invaded, and the enforcement of the ordinance is a mere incident to the protection of appellants against a threatened injury to their property. There are many cases in which it has been held that the fact that a nuisance is a crime and punishable as such, does not deprive courts of equity of the power and authority to restrain and abate such nuisance by injunction, in order to protect private rights. It is true that an act will not be restrained by injunction merely because it is illegal, but when it is shown to be dangerous to life, detrimental to health, or seriosuly injurious to property, it will be restrained, and while it has been held that the erection of a building will not be enjoined merely because it is prohibited by city ordinance, an injunction will be granted when allegations and proof show the infliction of injury for which there is no adequate legal remedy. Weakley v. Page (Tenn.), 46 Law. Rep. Ann., 552; State v. Patterson, 14 Texas Civ. App., 465, 37 S. W. Rep., 478; York v. Yzaguairre, 31 Texas Civ. App., 26, 71 S. W. Rep., 563.

There is some authority to the effect that an injunction will not lie to abate a nuisance that is not one in itself, independent of statutory declaration, but the weight of authority, we think, favors a different and more liberal doctrine, and permits of restraint by injunction against statutory nuisances where it appears that material injury will be inflicted by them.

In the case of Bank v. Sarlls (Ind.), 28 N. E. Rep., 434, the subject under consideration is discussed, and it is said: "When it is shown that the erection of a building, if permitted, will be in express violation of a valid municipal ordinance, although it would not be a nuisance per se, an individual who shows such fact, and shows, in addition, that its erection will work special and irreparable injury to him and to his property, is entitled to relief by injunction." The same principle is enunciated in Blanc v. Murray, 36 La. Ann., 162; McCloskey v. Kreiling (Cal.), 18 Pac. Rep., 433; King v. Davenport, 98 Ill., 304, and Kaufman v. Stein (Ind.), 37 N. E. Rep., 333.

It does not appear that appellees had an adequate remedy at law for the injuries about to be inflicted upon them. The rule that denies an injunction, except where there is no adequate legal remedy, has been relaxed to some extent in Texas, where law and equity are administered

by the same tribunals. In the case of Sumner v. Crawford, 91 Texas, 129, it is suggested that the rule has been relaxed by the provisions of article 2989, Revised Statutes, and the following language is used: "If, as here, the applicant shows a clear right to be left in the undisturbed possession of certain property, and that such right is about to be invaded without semblance of right by another, such invasion, on principle, should be prevented in its incipiency by injunction, instead of allowing the injury to be inflicted, and then leaving the party to his legally adequate, but in fact generally very inadequate, remedy of an action for damages."

The ordinance is not uncertain or obscure because it does not define the meaning of "fireproof" or "combustible" material. Those are words well defined and well understood, and on the trial the court instructed the jury that by those terms was not meant materials that could withstand any degree of heat, but such materials as would be proof against such fires as would likely occur in the city of Houston. To the jury was confided the determination of whether the materials used in the building were combustible or not.

The fourth, fifth, sixth, eighth, tenth, thirteenth and sixteenth assignments of error complain respectively of the overruling of different special exceptions and the refusal to give different requested charges. That the assignments treat of subjects that are not germane not only appears from the face of the assignments, but from the fact that four propositions having no relation to each other are placed one immediately after the other. The propositions are so general and indefinite that it would be difficult to ascertain precisely what points it is desired should be passed upon by the court. They might well be disregarded. However, we will say that the court did not err in striking out those portions of the answer that allege that other buildings in the vicinity of appellant's buildings are not constructed of proper materials; that appellees' building is not fireproof, and in striking out that part of the answer that set up the fact that appellants had been informed by experts that the kind of building they intended to erect was very substantial. The authorities cited by appellants do not sustain any propositions of law applicable to the matters attempted to be raised in the assignments of error.

That part of the appellants' answer alleging the failure and refusal of the city authorities to abate a nuisance created by an ordinance of the city, as a justification for the erection of a building prohibited by the ordinance, formed no defense to appellees' action, and was properly stricken out. The ordinance is effective as long as it is unrepealed, and the mayor and chief of police have no more right to violate it than any other citizen of Houston, and have no authority to grant a license to anyone else to violate it.

The twelfth assignment of error complains of the refusal of the court to charge the jury that appellees could not recover unless the ownership

of all of them in the buildings, sought to be protected, had been proved. The assignment is not followed by any statement whatever, and should not be considered. An investigation of the record, however, shows that the parties who recovered in the suit established their ownership in the property.

The fourteenth and fifteenth assignments of error are followed by four general propositions under which appear a statement. A strict application of the rules would inhibit a consideration of them. Their subject matter has been considered under other assignments.

The ordinance declares that it is unlawful to erect any building of combustible material or of material not fireproof, and the court very properly so instructed the jury. The uncontradicted evidence showed that the building was being erected within the fire limits established by the municipal government, and the court did not err in instructing the jury that such was the fact.

Appellants prosecute this appeal upon the theory, among others, that if other people in Houston had violated the ordinance as to the erection of fireproof buildings, this would license them to violate it by erecting buildings contiguous to those of others, and to preclude the latter from any remedy to protect their property. We know of no principle upon which to found such a proposition. It may be unjust and inequitable to permit others to erect houses in derogation of the statute, but that fact should not deprive appellees of the right to protect their property from a nuisance. The question at issue was, did the building proposed to be erected by appellants contravene and violate the terms of the ordinance, and if so, did such intended act materially injure the property of appellees? To those propositions the trial court restricted the evidence, and there is no ground for complaint at such action.

None of the bills of exception taken to the refusal of the court to permit different witnesses to answer the questions which are set out in them give the answers expected to have been elicited, with the exception of one in which the mayor would have answered that he had authorized the building of the house, and two in which the witnesses could have stated that adjoining buildings were not fireproof. Those answers were properly excluded, and the other bills of exception can not be considered because it is impossible for the court to determine what the witnesses might have answered. It is the unbroken rule that where objections are sustained to a question, the bill of exceptions must show what the answer would have been, the grounds upon which it was rejected, and its materiality.

The court instructed the jury to find against W. L. Foley, one of the plaintiffs, because he had failed to prove ownership of the property claimed by him. The jury ignored the instruction and returned a verdict for the plaintiffs, but the court rendered judgment in favor of all the plaintiffs except Foley, and decreed that an injunction should not issue in his favor. This action of the court was not disapproved of by

Foley, but appellants complain of it. How it affects them injuriously does not appear, and it is a matter of no concern to them. The court properly made the judgment conform to what must have been the intention of the jury.

The court very properly refused to disturb the verdict because of statements made after the termination of the trial by a juror to counsel for appellants as to the jury having looked out of a window at the building erected by appellants, about 300 feet distant. The impeachment of verdicts by the statements of jurors after the trial is viewed with great disfavor, and will not be tolerated by courts. As far back as the case of Mason v. Russell, 1 Texas, 725, the Supreme Court said: "The permitting such evidence can not be too strongly reprobated as leading to improper tampering with the jurors to procure such affidavits, after verdicts." As said by the Supreme Court in Bank v. Bates, 72 Texas, 137, "if there be any exception to this rule, it has not been defined in any case in this State."

We conclude that none of the assignments of error is well taken, and the judgment is therefore affirmed.

*Affirmed.*