## BRITISH GENERAL INS. CO., LIMITED, OF LONDON, ENGLAND, v. BOONE.

### No. 2906.

Court of Civil Appeals of Texas. El Paso.
Jan. 4, 1934.

Rehearing Denied Jan. 25, 1934.

Nat L. Hardy and T. M. West, both of San Antonio, and George Sergeant, of Dallas, for appellant.

J. L. McNees and McNees & Roberts, all of Dallas, for appellee.

HIGGINS, Justice.

Appellant issued a fire insurance policy in favor of J. T. and Louis Boone covering a stock of merchandise situate in Mt. Selman, Cherokee county, Tex. During the life of the policy a fire occurred, at night, destroying the property except a small salvage. Plaintiff's books were destroyed by the fire. They were in a safe in the building, which safe proved not to be fireproof. The Boones brought this suit to recover upon the policy.

From an adverse judgment upon special issue findings, the defendant appeals.

Various questions are presented by appellant, but upon the view we have of the case the judgment must be reversed and here rendered. We will therefore pass only upon those questions which arise out of the issues of fact. We pass upon all such issues to the end that it may not be necessary for the Supreme Court to remand the case to this court for further consideration in the event the Supreme Court should disagree with our ruling of reversal and rendition.

It is urged in behalf of appellant the evidence shows as a matter of law violation of the iron-safe and record warranty clause in these particulars, viz.: (1) Failure to keep the books and inventories in a fireproof safe at night; (2) failure to keep the safe securely locked; (3) failure to keep such a set of books as would clearly and plainly present a complete record of the business transacted including all purchases and sales.

The testimony of appellee shows the safe in question was of iron, about 3½ feet high and about 2 feet wide. The walls and door were about 6 inches thick. The safe had pigeonholes in it, and at the bottom a space of 10 by 14 inches. It had a combination lock, but the combination would not work and was not used. By turning a knob, however, the door was secured so it would stay closed. Boone did not know the make of the safe, but thought it was a Mosler. He got it from his uncle who formerly ran the business.

Iron is an incombustible material, and from the somewhat meager description given of the safe in question it would seem that it might be regarded as a fireproof safe within the meaning of the policy. The iron-safe clause does not imply a warranty on the part of the assured that the safe is in fact fireproof under all circumstances. Underwriters', etc., v. Palmer & Co., 32 Tex. Civ. App. 447, 74 S. W. 603; Knoxville F. I. Co. v. Hird, 4 Tex. Civ. App. 82, 23 S. W. 393; Chimene v. Baker, 32 Tex. Civ. App. 520, 75 S. W. 330.

The question as to the proper meaning of the term "fireproof safe," within the meaning of a fire insurance policy, is discussed in the first two cited cases. These cases and Chimene v. Baker, supra, support the view that the testimony presents an issue of fact as to the fireproof quality of the safe in question, within the meaning of the policy.

As to the provision that the safe should be kept securely locked at night, this does not necessarily mean that the combination lock should be set. A lock which would keep the door closed during a fire so as to preserve the fireproof quality of the safe should be regarded as sufficient. The sole purpose of such provision, in a fire policy, is to preserve that quality during a fire, and, if it is sufficient for that purpose, it meets the requirement as to secure locking. The evidence shows that by turning the knob the closed

door was held in place, and the safe was found closed after the fire. This phase of the evidence shows no breach of the iron-safe clause.

■ As to the third point made, the evidence shows Boone kept a book in which he entered the lump sum cost of all purchases made by him. He took invoices of all purchases. The invoices were loosely slipped in this book and kept. He had a ledger in which he kept a record of credit sales. Most of his sales were for cash. In another book called the cash book he entered the lump sum totals of each day's cash sales. At the end of each day's business he checked the cash register, and the totals entered were those shown by the cash register.

J. T. Boone testified his brother helped him all the time, and upon different occasions he would get other help; that whatever cigarettes and tobacco his brother needed he took out of the stock; that this was not run through the cash register as a cash sale, and no record was kept of it, and his brother took such sums of money as he needed from the cash register; on occasions, when trade was heavy, he (J. T. Boone) would get either Mr. Burton or Mr. Carlton to help them, and he would pay them in cash or merchandise or either one of them. If he paid in cash, it would come out of the cash register and in merchandise it would come out of the stock, and would not be listed as a cash sale, and the records kept by him would not show how much it was, and he testified he had no idea about how much he spent for extra help; that he (J. T. Boone) took cash from the cash register as he needed it, and that he would get tobacco and other items he needed from the stock of goods in the store which did not appear as a cash sale, or in the books kept by him. He also took shirts from the store and other clothes from time to time, of which no record was kept. Boone also testified he paid part of his rent in merchandise, of which no record was kept.

He further testified he had a gasoline pump outside the store and sold gasoline to the public. The cash received from gasoline sales was not kept separate from the merchandise sales; it "was all run together." The gasoline was not covered by the policy.

Waiving all other questions as to the sufficiency of the record reflected by the books, it is apparent there was no way whatever of accurately determining from such record how much was withdrawn from the stock of merchandise as represented by the cash taken from the cash register by the Boones for their personal use and that taken and paid out for clerk hire; nothing to show the amount of merchandise they withdrew for their own use; nothing to show the amount of the gasoline sales. In our opinion, the facts testified to by J. T. Boone (who alone testified upon this phase of the case) show that from the books kept by him it would be impossible to determine how much merchandise had been removed prior to the fire, and therefore shows a failure to substantially comply with the record warranty clause. Commonwealth, etc., v. Lawrence Groc. Co. (Tex. Civ. App.) 244 S. W. 200.

We therefore sustain the third point presented, reverse the judgment, and here render the same in appellant's favor.

Reversed and rendered.