JAMES N. SICKLES, as Administrator of WINFIELD F. SICKLES, Deceased, Respondent, *v.* THE NEW JERSEY ICE COMPANY, Appellant.

1. NEGLIGENCE — SKATING UPON ICE WITHIN AREA APPROPRIATED FOR CUTTING. If one familiar with the situation skates upon ice newly formed over a cutting from which the original ice had been removed by an ice company only three days before, to his knowledge, and guarded, at the time and previously, to his knowledge, on only three sides by lines of bushes, commencing some distance from the shore and not running on the shore side fronting an ice house, and the new ice turns out to be only three-quarters of an inch thick, and the skater breaks through, he is guilty of contributory negligence which (irrespective of the question whether the bush lines as set out were a surrounding of the cutting, within the meaning of the statute, Penal Code, § 429) will prevent a recovery of damages from the ice company on the ground of its negligence.

2. SKATING UPON WATER HIGHWAY — ASSUMPTION OF SAFETY. The doctrine, that a traveler on a city street may, without negligence, rely on the assumption that the municipality has performed its duty in keeping the streets safe, is not applicable to a skater on a water highway, as against one having the right to cut ice therefrom.

*Sickles* v. *New Jersey Ice Co.*, 80 Hun, 213, reversed.

(Argued April 26, 1897; decided May 4, 1897.)

APPEAL from a judgment of the General Term of the Supreme Court in the third judicial department, entered July 21, 1894, which affirmed a judgment in favor of plaintiff entered upon a verdict, and also affirmed an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Frank H. Osborn* for appellant. The plaintiff was not entitled to recover because of the utter absence of evidence, direct or circumstantial, that the deceased was free from contributory negligence, and defendant's motion for a nonsuit should have been granted for this reason. ( *Wiwirowski* v. *L. S. & M. S. R. Co.*, 124 N. Y. 420; *Weston* v. *City of*

*Troy,* 139 N. Y. 281; *Whalen* v. *C. G. L. Co.,* 151 N. Y. 70; *Tucker* v. *N. Y. C. & H. R. R. R. Co.,* 124 N. Y. 308; *Heaney* v. *L. I. R. R. Co.,* 112 N. Y. 122; *Reynolds* v. *N. Y. C. & H. R. R. R. Co.,* 58 N. Y. 248; *Tolman* v. *S., B. & N. Y. R. R. Co.,* 98 N. Y. 198; *Boyce* v. *M. R. Co.,* 118 N. Y. 318.) The General Term held that the deceased had the right to assume that the defendant had fully complied with the requirements of the statute relating to the surrounding of its cuttings with bushes or other guards, and the court seems to have wholly disregarded the fact that he had actual knowledge as to the extent of the bushes or guards which were erected and maintained by the defendant around its ice field. This resulted in error. (*Knisley* v. *Pratt,* 148 N. Y. 372; *Horton* v. *V. I. W. Co.,* 13 App. Div. 508.) The theory that one traveling on the ice of a river highway is not negligent in assuming that he runs no risks except the ordinary risk incident to such highway, is erroneous. (16 Am. & Eng. Ency. of Law, 246; Leavitt on Neg. 499.) If it be conceded that the defendant failed to comply with the statute by making its cuttings and continuing its work to the very last day without having first erected bushes or guards, still the plaintiff was not entitled to recover, because the deceased had actual knowledge of the omission and approached the ice field without exercising any precaution to ascertain its safety. (*Cullen* v. *D. & H. C. Co.,* 113 N. Y. 667.) Proof of non-compliance with statutory requirements is *prima facie* evidence of negligence, but if it can be seen that such non-compliance did not contribute to the injury complained of, it furnishes no ground for recovery. (*Chrystal* v. *T. & B. R. R. Co.,* 124 N. Y. 519; *Daniels* v. *S. I. R. T. Co.,* 125 N. Y. 409.) The defendant offered to show on the trial that the bush line it maintained during the winter of the accident was the same as it had erected and maintained at that point for years, and the same as had been erected and maintained by others engaged there in the same business, and that no accident had ever happened there before; but the evidence was erroneously excluded under the defendant's exception.

(*Fox* v. *Mayor, etc.*, 70 Hun, 181; *Ryan* v. *M. R. Co.*, 121 N. Y. 126.)

*John Cadman* for respondent. The defendant failed to comply with the statute, requiring its cuttings or openings to be surrounded with a fence or bushes or other guard and to maintain the same until the ice had again formed therein to a thickness of at least six inches. (Penal Code, § 429; *Jetter* v. *N. Y. & H. R. R. Co.*, 2 Abb. Ct. App. Dec. 458; *Willy* v. *Mulledy*, 78 N. Y. 310; *Converse* v. *Walker*, 30 Hun, 596.) The defendant claims that, notwithstanding there was no fence of bushes or other guard surrounding this cutting, there were " other guards sufficient to warn all persons," to wit, the plow marks, and different color of the ice. Such sufficiency was at most a question for the jury. (*Dunn* v. *Durant*, 9 Daly, 390; *Willy* v. *Mulledy*, 78 N. Y. 310; *Knupfle* v. *K. Ice Co.*, 84 N. Y. 488; *Weston* v. *City of Troy*, 139 N. Y. 281; *Boyce* v. *M. R. Co.*, 118 N. Y. 314; *Ochsenbein* v. *Shapley*, 85 N. Y. 214; *Rehberg* v. *Mayor, etc.*, 91 N. Y. 137; *Weed* v. *Vil. of Ballston Spa*, 76 N. Y. 329; *Hart* v. *H. R. B. Co.*, 80 N. Y. 622; *Stackus* v. *N. Y. C. & H. R. R. R. Co.*, 79 N. Y. 464; *Kain* v. *Smith*, 89 N. Y. 375.) Defendant offered to show that the bushes for the purpose of indicating the field, were erected and maintained in the same way and to the same extent as for the last twelve years, and that no accident had happened, and that during all those years other companies have adopted the same method. This evidence was properly excluded. (*Hopper* v. *Sage*, 112 N. Y. 530; *Wright* v. *Boller*, 42 Hun, 77; *Earl* v. *Crouch*, 40 N. Y. S. R. 847; *Bradley* v. *Wheeler*, 44 N. Y. 495; *Colgate* v. *Penn. Co.*, 102 N. Y. 120; *Tolman* v. *S., B. & N. Y. R. R. Co.*, 98 N. Y. 198; *Reynolds* v. *N. Y. C. & H. R. R. R. Co.*, 58 N. Y. 248.)

Haight, J. This action was brought to recover damages resulting from the death of the plaintiff's intestate, alleged to have been caused by the defendant's negligence. The defend-

ant was engaged in harvesting ice from the Hudson river at Stuyvesant Landing. Its ice house was located upon the banks of the river, and was about 350 feet in length. After ice had formed upon the river in the winter of 1893 the defendant fenced or staked out a field with bushes immediately in front of its ice house. The bushes, commencing at a point upon the river below the ice house, about 150 feet from the shore line, extended out into the river and around a field to the shore, or to within about the same distance of the shore line, above the ice house. The defendant first opened a field within the bush line, which we will designate as number one, and took the ice therefrom and stored it in its house. It thereafter opened another field, known as number two, from which it also had taken the ice. It then cleared and scraped a new field, known as number three, lying between the two fields, from which the ice had been taken, and gathered from this last field sufficient to complete the filling of its house. The field was about 345 feet directly west from the dock of the ice house and was connected therewith by a channel or canal cut in the ice through which the cakes were floated to the dock. All of the three fields from which ice had been taken were within the bush line above referred to. The defendant had completed its work of gathering ice on the 24th or 25th of January, and new ice had formed over the field from which the ice had last been taken of about three-fourths of an inch in thickness at the time the accident occurred. The ice had been cut into cakes by an ice plow, and the marks of the plow upon the ice extended some feet beyond the field from which the ice had actually been taken. Shortly after midday of the 28th of January, the plaintiff's intestate, who was a bright, intelligent boy thirteen years of age and a fine skater, went upon the ice with three other boys to skate. They first skated up the river near the shore line in front of the ice house to a point just above, where they stopped, and one of their number went on shore to get a strap with which to fix his skate. After this errand had been performed, Winfield, the deceased, started a little ahead of the rest, saying to them,

" Come on and I will show you some fine skating ! " He first skated backwards down to the canal, then turned and skated forward out toward the center of the river. The Van Valkenberg boy then called out not to go on the ice that looked like water, but Winfield made no reply and continued on. He was followed by the other boys some distance in the rear, who stopped when they arrived at the plow marks surrounding the new field, but Winfield continued on over the plow marks out onto the new field, broke in and was drowned.

It is claimed that the defendant is liable by reason of its failure to continue its bush fence along the shore line connecting the two ends of the bush line already described, thus completely surrounding the ice fields opened by it. This claim is based upon the provisions of section 429 of the Penal Code, which provides as follows : " A person or corporation cutting ice in or upon any waters within the boundaries of this state, for the purpose of removing the ice for sale, must surround the cuttings and openings made, with fences of bushes or other guards sufficient to warn all persons of such cuttings and openings. Which fences or guards must be erected at or before the time of commencing the cuttings or openings, and must be maintained until ice has again formed therein to the thickness of at least six inches. Whoever omits to comply with this section is guilty of a misdemeanor." We do not, at this time, deem it necessary to consider or discuss the provisions of this statute, or to determine whether the bush lines, as set, were a surrounding of the cuttings within the contemplation of the legislature.

As we have seen, the deceased was a bright, intelligent boy, familiar with the river and an accomplished skater. He lived near there, and had been often upon the ice in that vicinity. The plaintiff, who was his father, admitted that he had been upon the ice skating with his son ; that they were skating upon the new field when the defendant was scraping and cleaning it for plowing. Other witnesses testified that Winfield was upon the ice several times while they were engaged in taking the ice from the new field, and one witness stated that he

saw him there on the last day that they took out ice ; that he
was skating, and was about as far away as across the court room ;
that the plow marks cutting the ice into cakes were plainly
discernible in the ice bordering the field from which the ice
had been taken, and that in order to reach the new ice he had
to skate over the blocks so marked and cut.    It is quite possible
that the deceased did not hear the word of warning uttered by
the Van Valkenberg boy, but his eyesight was good ; he was
intelligent and knew the situation ; he knew that he was
immediately in front of the ice house ; that the field had been
staked out with bushes extending out into the river and
around beyond the openings made in the ice.    He knew
that there were three different fields from which the ice had
been taken, the location and extent of such fields.    He, there-
fore, possessed all of the information with reference to the
situation that was known by either of the servants or agents
of the defendant.    Possessing full knowledge of the situation,
and disregarding all the visible warnings by way of bush lines,
plow marks and the difference in color between the newly-
formed and old ice, he negligently skated out upon the new
field and unfortunately met his death.    It is quite possible
that he thought that the new ice formed was of sufficient
strength, for it is hardly possible that he skated upon the new
field unintentionally.    His calling out to the other boys to
come on and that he would show them some fine skating, evi-
dently had reference to the new field upon which the ice had
newly formed.    As it turned out, he misjudged as to the
strength of the ice.    The learned General Term, in consider-
ing this question, says with reference thereto, that : " Although
Sickles knew that he was skating upon the cutting made by
the defendant, it does not appear that he knew that the ice
there was only three-quarters of an inch thick, and I do not
think he was, as a matter of law, negligent in assuming that
the defendant would comply with the statute and keep a
fence or guard around the cuttings until the ice had become
safe.    It was not negligence for him to assume that the
defendant would not be grossly negligent.    The absence of a

fence was an assurance to him that the ice was six inches in thickness. It was as if an agent of defendant had been stationed at the place in question, and so informed him." We can hardly approve of this view. Winfield knew that there was no man stationed there telling him that the ice was six inches thick. He knew that there had been no fence of bushes upon the river that winter in the vicinity of this place other than the bushes described; he knew that the defendant had been taking ice from the three fields; he knew their location, size, the date on which the last ice was taken, and that but three days had intervened. A person has no right to assume as a fact that which he knows does not exist. The learned General Term in its opinion appears to have also considered the river to be a public highway, and that Winfield in skating over it had the right to assume that it was safe, the same as " one walking along the streets of a city may, without negligence, rely on the assumption that the municipal corporation will perform its duty in keeping the streets safe." We think there is quite a difference between a public street in a city and a river. It is true that the Hudson river is one of the water highways of the state. The deceased had the right to skate on such portions of the river as were covered with ice, he himself judging as to its safety. The defendant had the right to cut and gather ice from the river for the purposes of its business, even though it destroyed the skating. The statute imposed but one condition : the defendant must first surround the field proposed to be cut with guards, so as to warn persons of the danger of approaching within it. With reference to the public streets of a city, an active duty is imposed upon the municipal authorities to keep them in a safe condition, so that all persons may pass safely thereon. There is no such requirement with reference to a water highway.

A very sad misfortune has befallen this plaintiff; but it is very apparent that it was largely brought upon him by his son's negligence. It follows that the plaintiff is without

12

remedy, and that the defendant's motion for a nonsuit should have been granted.

The judgment should be reversed and a new trial granted, with costs to abide the event.

All concur, except MARTIN, J., not sitting.

Judgment reversed.