CABONI v. UNION CARBIDE CO. et al.

(District Court, W. D. New York.    July 7, 1916.)

NAVIGABLE WATERS ⬤⟶30—RIPARIAN OWNERS—RIGHTS OF.

A riparian owner, who lawfully dug a ditch in the bed of a river, is not liable for the death of one drowned therein, who came upon his land and went into the river to bathe, particularly where there were sheathings protruding from the water, which should have warned the bather of the ditch, and no public highway at that point led to the river, for no one has an absolute right to bathe or swim in a public stream, and the owner of the upland is under no duty of protecting persons coming uninvited on his land for the purpose of bathing.

[Ed. Note.—For other cases, see Navigable Waters, Dec. Dig. ⬤⟶30.]

⬤⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

At Law. Action by Michele Caboni, as administrator of the goods, chattels, and credits of Cosimo Quagliano, deceased, against the Union Carbide Company and another. Complaint dismissed.

Horace O. Lanza, of Buffalo, N. Y. (John K. White, of Buffalo, N. Y., of counsel), for complainant.
Dudley & Gray, of Niagara Falls, N. Y., for defendants.

HAZEL, District Judge. This is an action for damages arising from the accidental drowning in Niagara river of Cosimo Quagliano on the 18th day of July, 1912. The drowning occurred about 150 feet from shore, in consequence of decedent's stepping into a trench or depression in the bed of the river. The plaintiff has failed to establish a cause of action.

It will be unnecessary to discuss the various matters contained in the briefs relating generally to the rights of the public or of riparian owners to the bed of Niagara river, or specifically to the rights of the Niagara Falls Power Company thereto through legislative enactments, especially with regard to its power to lease or license the stream to the codefendant, the Union Carbide Company, which is alleged to have negligently left the trench open, save to state that in my judgment the defendants had the lawful right to excavate in Niagara river near the shore at the point where the drowning occurred, and that nuisance does not lie.

The question of whether the decedent was drowned in the trench of the Union Carbide Company is left in some uncertainty, as in the map in evidence (Defendants' Exhibit 4) the water is shown to be 8.4 feet deep over the Hooker trench, adjoining the trench of the Union Carbide Company, while out farther, and near the carbide pipe line, it was only 3.4 feet in depth. But, assuming the drowning to have occurred in farther toward the shore, where excavating by means of a dredge and scow was done by the Union Carbide Company in June, 1911, I nevertheless believe that there can be no recovery by the plaintiff. The deceased, who was employed in a neighboring factory, did not have the right to bathe or swim in the river at the point where he was drowned. The land adjacent to the river, as well as the river bed at this point, was in the possession of the defendants and under their control; there was no public highway at this point leading to the river, or directly to the land along the shore. It has long since been established law in this state that the riparian owner has the right of access to a public stream from his property to the exclusion of other persons. Wetmore v. Atlantic Lead Co., 37 Barb. (N. Y.) 70.

Actions to recover for drowning while bathing or swimming are rare; but the case of Hunt v. Graham, 15 Pa. Super. Ct. 42, is a close approach to the case at bar. There the learned court held that a person has no absolute right to bathe or swim in a public lake, river, or stream, the right being limited to fishing, boating, cutting ice, etc., and that a person is not permitted to enter upon the premises of another for the purpose of bathing or swimming; the owner of the uplands owing no duty of protection to persons coming uninvited upon

his lands and entering a stream to bathe without the consent of the owner, and as said by the court:·

"Defendants were not bound in the exercise of ordinary care to anticipate and provide against the act of a boy of this age, who, knowing that he could not swim, and that such holes were in the near neighborhood, would walk over a river bottom, which he could not see, and enter this hole."

While it is no doubt true that the decedent in this case, who also could not swim, did not know that a trench had been previously dug by the Union Carbide Company, there is evidence that the banks were used as a sort of dumping ground for factories; that sheathings had been left in the surface excavation, which protruded above the water for quite a distance from the shore, and should have warned him to be on his guard. Upon 'inquiry he could easily have ascertained that there were holes or depressions at this point in the bottom of the river. Sickles v. New Jersey Ice Co., 153 N. Y. 83, 46 N. E. 1042; Murphy v. City of Brooklyn, 98 N. Y. 642. Aside from this, there was 'no evidence that the defendants had any knowledge that persons were accustomed to bathe in the river at this point, and accordingly they were not required to post prohibitive or warning notices.

The complaint is dismissed, with costs.