FRANK BOYD *vs.* JOHN O. ELLISON.

MOSES BOYD *vs.* JOHN O ELLISON.

ANGELINA CRESPIE *vs.* JOHN O. ELLISON.

THERESA CRESPIE *vs.* JOHN O. ELLISON.

PASQUALE CRESPIE *vs.* JOHN O. ELLISON.

PAULINE LARSEN *vs.* JOHN O. ELLISON.

ARTHUR M. LARSEN *vs.* JOHN O. ELLISON.

VELMA DOWNING *vs.* JOHN O. ELLISON.

WALTER DOWNING *vs.* JOHN O. ELLISON.

FRANK BOYD *vs.* ELLISON MOTOR COMPANY.

MOSES BOYD *vs.* ELLISON MOTOR COMPANY.

ANGELINA CRESPIE *vs.* ELLISON MOTOR COMPANY.

THERESA CRESPIE *vs.* ELLISON MOTOR COMPANY.

PASQUALE CRESPIE *vs.* ELLISON MOTOR COMPANY.

ARTHUR M. LARSEN *vs.* ELLISON MOTOR COMPANY.

PAULINE LARSEN *vs.* ELLISON MOTOR COMPANY.

VELMA DOWNING *vs.* ELLISON MOTOR COMPANY.

WALTER DOWNING *vs.* ELLISON MOTOR COMPANY.

Essex.    January 14, 1924. — February 28, 1924.

Present: RUGG, C.J., DeCOURCY, CROSBY, PIERCE, & CARROLL, JJ.

*Way*, Public: unlawful coasting.    *Negligence*, Trespasser, In use of highway.    *Municipal Corporations*, By-laws and ordinances.

Persons coasting on a double-runner upon a public highway in a city in violation of an ordinance which provided that no person should " coast, or slide down, across, in, on, over or along any street . . . upon any hand-sled, board, or otherwise, except in such places and under such restrictions as the municipal council shall determine and prescribe," cannot maintain an action for personal injuries resulting from a collision with a motor vehicle alleged to have been negligently driven upon such highway, irrespective of whether the person in control of the double-runner was negligent and whether, if he was negligent, such negligence could be imputable to the other persons upon the double-runner.

EIGHTEEN ACTIONS OF TORT by nine plaintiffs, each of whom brought an action against John O. Ellison, as driver of an automobile, and also against Ellison Motor Company,

as its owner, for injuries received in a collision between the automobile and a double-runner upon which the plaintiffs were coasting on a public way in Haverhill. Writs dated January 18, 1922.

In the Superior Court, the actions were tried together before *Whiting*, J. Material evidence is described in the opinion. At the close of the evidence, the defendants moved that verdicts be ordered in their favor. The motions were denied. Verdicts were returned for each plaintiff against each defendant in the following sums: Frank Boyd, $500; Moses Boyd, $293; Angelina Crespie, $1,750; Theresa Crespie, $100; Pasquale Crespie, $1,148; Pauline Larsen, $7,000; Arthur M. Larsen, $1,723.28; Velma Downing, $100; Walter Downing, $38. Before the verdicts were recorded, the judge reserved leave to enter verdicts for the defendants if there was no evidence warranting the submission of the actions to the jury.

*W. Flaherty,* (*D. J. Cavan* with him,) for the defendants.

*F. H. Magison,* for the plaintiff.

PIERCE, J. These are separate actions of tort, tried together to a jury, the evidence being the same in all, to recover damages for injuries received by the several plaintiffs as the result of the collision of a double-runner sled, on which they were coasting on Mill Street in the city of Haverhill, with an automobile, owned by the defendant Ellison Motor Company and driven by the defendant John O. Ellison. The accident happened a short distance up from the intersection of Mill Street and Water Street, on the evening of December 29, 1921, about 9 or 9:15 o'clock of a " very dark night." At the time of the accident there was an ordinance in force in the city of Haverhill prohibiting coasting or sliding down streets, which applied to Mill Street, and had not been modified or suspended, in any way. That ordinance read as follows: " Section 16. No person shall course, coast, or slide down, across, in, on, over or along any street, way, or sidewalk, upon any hand-sled, board, or otherwise, except in such places and under such restrictions as the Municipal Council shall determine and prescribe." This ordinance was binding on all persons and no officer of the

city had power to suspend its operation. *Commonwealth v. Worcester,* 3 Pick. 462. *Kelley* v. *Board of Health of Peabody, ante,* 165.

Mill Street runs northeasterly from its intersection with Water Street " up to the top of a hill, down a hill, and over another hill; . . . the grade begins at Arlington Square and then the course of the street ' is rather,— sort of a twisting and turning all the way down until you reach Summer,' " Street; " the first straight part of Mill Street comes about two hundred feet above Summer Street," in all " ten hundred and forty feet, more or less straight road." The width of Mill Street varies from twenty-six to fifty feet. The curve leading from Water Street into Mill Street is approximately a three hundred foot radius, being sharper at the Water Street end. The gutter and sidewalks adjacent to the roadway on Mill Street are of dirt; there are two trees standing on the curve on the northerly side of the street; between the trees and the surface of the macadam road is a cobbled gutter which is nine inches below the travelled surface of the road; the distance from a watering trough which stands in the curve to the second tree on the left as one goes up is about eighty feet. The grade of the street is about six per cent to Summer Street.

The plaintiffs, on the double-runner, started at Arlington Square with the plaintiff Boyd at the front end at the ropes by which the sled was steered. The coasting was good, the whole road was smooth and hard, the ice was hard and slippery. They came down the hill very rapidly: as they passed Summer Street the sled ran almost over to the gutter; beyond Summer Street at several sharp turns the sled was turned into the middle of the road because the back part would slew; at a point just below Summer Street, near the second tree, Boyd saw the two white lights of the defendant's automobile near that tree. He could have seen the reflection of these lights as the automobile came around the corner into Mill Street, if he had been looking just before he saw the lights. He was in fact watching the road, and watching the sled so that he could hold it steady. Watching the road took up all his time and attention because he did

not want to take any chances of turning over at the speed he was going and because he did not expect anybody to be there. When he saw the automobile he pulled the sled into the gutter, and the plaintiffs received the injuries of which they severally complain.

The evidence warranted a finding that the defendant Ellison drove the automobile from Water Street into Mill Street, turning to his left without passing "to the right of and beyond the centre of the street intersection before turning," in violation of chapter 24, Part 2, § 6, of an ordinance of the city of Haverhill; that the automobile was moving slowly, or had stopped to the left of the middle of the way, near the gutter and trees, when the collision occurred; and that Ellison did not know the street was used for sliding when he turned the car into it.

The case comes before this court on exceptions to the refusal of the trial judge to direct verdicts for the defendants. Assuming a violation of the ordinance by Ellison and a consequent question of fact for the jury, there remains the question whether the unlawful acts of the several plaintiffs prevent them recovering and, as matter of law, required that the trial judge should give the requested instruction.

The indisputable illegality of the conduct of each plaintiff is in no manner dependent upon proof of the wrongful conduct of any confederated plaintiff: it follows that it is not necessary to determine whether Boyd was negligent in the steering of the double-runner; and, if so, whether his negligence was imputable to the plaintiffs who had entrusted their safety to his care, within the rule governing the law of imputed negligence as laid down in *Shultz* v. *Old Colony Street Railway*, 193 Mass. 309, and subsequent decisions of this court. *Shapiro* v. *Union Street Railway*, 247 Mass. 100. The ordinance is an absolute prohibition against the use of the streets for coasting. The element of illegality inheres in the action and not in the mode of its exercise. The act of coasting in itself constitutes the illegality of the coaster's conduct and not the manner in which that person exercises the common right to travel upon the public ways. The ordinance in question does not concern itself with the

form of the coasting conveyance or with any adjunct to it. It is plain that in the case at bar the immediate and efficient cause of the accident was the illegal use made of the street, and that such use was not a condition of an otherwise lawful use but was a contributing cause without which the accident could not have happened.   It was said in *Bourne* v. *Whitman*, 209 Mass. 155, 167, with a collection and analysis of the cases, " It has been established from early times that one who is violating a criminal law cannot recover for an injury to which his criminality was a directly contributing cause."

In accordance with the leave reserved before the recording of the verdicts, a verdict is to be entered for the defendant in each action.   G. L. c. 231, § 120.

*So ordered.*