MARIE TOFT, ADMINISTRATRIX OF THE ESTATE OF CLARA TOFT, APPELLANT, V. CITY OF LINCOLN, APPELLEE.

FILED NOVEMBER 10, 1933. No. 28612.

*Perry, Van Pelt & Marti* and *L. B. Fuller*, for appellant.

*Max Kier* and *Lloyd E. Chapman*, *contra*.

Heard before GOSS, C. J., ROSE and PAINE, JJ., and BEGLEY and HORTH, District Judges.

PAINE, J.

Appellant as plaintiff brought action against the city of Lincoln, defendant and appellee, to recover $10,000 for the death by drowning of Clara Toft in a lake in Pioneers park, Lincoln. At the close of the plaintiff's evidence the court instructed a verdict for the defendant.

The appellant in her petition charged that the city of Lincoln, a municipal corporation, acquired by deeds, in 1928 and 1930, certain tracts of land, of approximately 600 acres, which were accepted and taken over by the city, and named Pioneers park, which park is located southwest of, and outside of, the city limits. That an artificial lake was created therein by damming up the waters of Haynes creek, thus causing the creek to overflow its banks, and creating a muddy, shoestring lake, with an irregular shore line, and scattered in this area, both above and below the surface of the water, were trees, snags, stumps, and underbrush. That its depth varied from 10 to 20 feet, with steep, slippery mud banks, which lake constituted an unsafe and dangerous condition, a menace to life, limb and health, and that the negligent, wilful, and wanton planning, construction, maintenance, and use of said lake by the city of Lincoln constituted a

nuisance. That while in this incomplete condition, the city entered into an agreement with George E. Schmidt to operate and maintain a boating concession, in which he let out boats and gave boat rides for hire, and retained all fees collected therefrom, and compensated the city by helping to complete the lake and drainage system. That said Schmidt built a boathouse and landing wharf near the east end of the lake, and had a 17½-foot outboard motor boat, with a carrying capacity of nine persons, the same being equipped in the bow with an automobile headlight, operated by storage battery. That there were no lights around said lake, no lifeguards or policemen on duty, and the lake was located approximately a mile from the nearest telephone, and further charged that said Schmidt was inexperienced and incompetent to operate such a boat in the narrow, tortious creek channel of the alleged lake. That at 10 p. m., July 26, 1930, four young men and four young ladies embarked on said motor boat, with the said Schmidt in charge and operating the same; that said boat was overloaded, and the load improperly distributed, and could not negotiate the sharp curves, and shipped considerable water. The said Schmidt suddenly turned the boat from its course, causing it to tip over and throw all of the passengers into the water, and the plaintiff's intestate was drowned. The plaintiff charges that the city of Lincoln caused the death of the plaintiff's intestate by "wantonly, carelessly, negligently, and knowingly creating and permitting an unsafe and essentially dangerous condition in Pioneers park, by planning and carrying out a public improvement within the limits thereof in the defective and unskillful manner as alleged herein, and before its completion setting up a commercial enterprise in connection therewith, with an inexperienced and incompetent person in charge thereof, and inviting and soliciting the patrons of said park to patronize and use the same, impliedly representing that the situation and condition were reasonably safe and that said lake could be properly used and enjoyed for such

purposes, which affirmative negligence and maladministration resulted in the injury complained of." That she was a self-supporting minor, of the age of 18 years, earning $1,000 a year, from which she contributed to the support of her mother, who was dependent thereon. That a claim for $10,000 was filed with the city and rejected.

The demurrer to said petition being overruled, an answer was filed, which admitted that Clara Toft was drowned on July 26, 1930, and the defendant alleged that the proximate cause of death was her own negligence and the negligence of her companions in moving about in a boat on the lake in Pioneers park in such a manner as to cause it to overturn.

In examining the evidence in regard to the accidental upset of the boat, to see if it supports the argument of the plaintiff that the boat either struck a large submerged stump, or else some of the branches growing up from stumps might have caught in the propeller blade of the outboard motor, we have been unable to find any witness so testifying. Two of those in the boat testified that there were weeds or brush above the surface of the water along near the bank; another testified that the boat made a sudden turn in the water, and Arthur V. Shaffer told that a stump was visible near the place of the accident when the lake had been drained, but stated on cross-examination that he estimated the top of the stump would be about four feet under water before the lake was drained. The conclusion from all of the evidence indicates that the boat was heavily loaded at the front end, and was shipping some water, and Mr. Schmidt, upon complaint of those in the front end, said that he would "park" the boat, and immediately turned the boat toward the shore, when the upset occurred. We are unable to find any evidence to indicate that the upset occurred by reason of the boat striking any obstruction.

■ Among the nine grounds for reversal set up by the plaintiff, the one insisted upon the strongest in the briefs and argument is that the court erred in holding that, the

accident having taken place within the limits of a public park, owned and operated by the defendant city as a governmental function, a municipal immunity arises.

There is a direct conflict between the decisions in various states upon the question whether a city park is conducted by a city in a governmental and public capacity, or in its private and proprietary capacity. 19 R. C. L. 1129, sec. 407.

From a careful examination of the authorities, it appears that the decisions of but a few states support the latter view, holding the city responsible to the same extent as a private proprietor, this minority view being supported by the case of *Norberg v. Hagna,* 46 S. Dak. 568, 29 A. L. R. 841, holding the city liable for injuries in permitting a swimming pool in a park to be in an unsafe condition, and *Byrnes v. City of Jackson,* 140 Miss. 656, 42 A. L. R. 254, where dangerous animals in a public park zoo caused injuries. Connecticut is another of the states holding that immunity does not attach to a city for nuisances created by it, and in a case where injury followed diving into shallow water in a public park, the city was held. *Hoffman v. Bristol,* 113 Conn. 386, 75 A. L. R. 1191. See, also, *Capp v. City of St. Louis,* 251 Mo. 345, 46 L. R. A. n. s. 731, Ann. Cas. 1915C, 245.

The majority view, holding that municipal corporations are not liable for negligence in the performance of governmental functions, including the establishment and operation of the city park, is supported by *Emmons v. City of Virginia,* 152 Minn. 295, 29 A. L. R. 860. Attention may be called to other cases supporting the same view, as follows:

In *St. John v. City of St. Paul,* 179 Minn. 12, a diver struck some sharp substance in Lake Phalen, maintained in a public park by the city of St. Paul. The court directed a verdict for the defendant on the ground that the city was performing a governmental function, and not liable for negligence, even if any had been proved, and that the small charge for the use of a bathing suit

would not subject the city to liability where otherwise no liability existed.

In *Warren v. City of Topeka,* 125 Kan. 524, 57 A. L. R. 555, a 12-year-old girl was drowned in a cement swimming pool in Gage park. In a suit brought for damages, the court sustained a demurrer, and this was affirmed on appeal to the supreme court. The girl was attending a Sunday School picnic in the park; no lifeguard was on duty, and, getting beyond her depth, she was drowned. "The swimming pool was doubtless attractive to children, but it was not a nuisance, producing public annoyance, inconvenience, discomfort, or hurt. It was a feature of the park tending to promote the public health, happiness and welfare. The accident to plaintiffs' child was a misfortune greatly to be deplored, but it did not change the essential nature of the place."

In *Gensch v. City of Milwaukee,* 179 Wis. 95, city employees were preparing a bath house for the opening of the bathing season, and were taking out lockers to clean them. A five-year-old boy climbed up on one of these lockers, which fell, causing his instant death. It was held that the negligence of the city employees in leaving this locker, which was attractive and dangerous to children, was a mere circumstance in performing part of the services to the city, and that fact cannot take this particular case out of the well-established rule that "a city is not liable for damages caused by the negligence of its servants engaged in the performance of a governmental function."

In our opinion this court has already taken its stand with the majority rule, for in *Faust v. Gore,* 119 Neb. 883, the plaintiff sought to hold the city of Lincoln and the Antelope Golf Club for damages suffered from being struck with a golf ball driven from the first tee in Antelope park. The city maintained that neither it nor the golf club was liable, because it was acting in a governmental capacity in maintaining and operating the park, and at the conclusion of the plaintiff's evidence a directed verdict in favor of the city of Lincoln was entered by the trial court.

In the case of *Caughlan v. City of Omaha*, 103 Neb. 726, the city maintained a public park and municipal beach on Carter lake, and a patron, in diving from a springboard, struck his head on the bottom of the lake, at a depth of 3½ feet, and broke his neck, resulting in his death, and suit was brought for $10,000 for negligence, and a demurrer was sustained to the petition. Such ruling was affirmed in this court. Judge Rose held that a city, in maintaining such a park and beach, performed a governmental function, as distinguished from a proprietary or business enterprise, and was not pecuniarily liable for personal injuries resulting from the negligence of city officers, and that such exemption was not changed because a small incidental revenue was derived therefrom. This case is in point, and determines that a city cannot be held for negligence under the facts stated.

■ Plaintiff also insists that, when a city creates, or knowingly permits to exist, a nuisance, by way of a dangerous condition in a park or playground, it is liable for any resulting injuries for the creation or allowance of a dangerous public nuisance.

Plaintiff urges upon our attention the famous belladonna case, being the case of *Glasgow Corporation v. Taylor* (1922) 1 A. C. (Eng.) 44, 29 A. L. R. 846, being an appeal from the court of sessions in Scotland to the House of Lords. It is set out that the city of Glasgow had a botanic garden adjoining a playground, in which various shrubs were planted for scientific purposes, among which was a shrub named atropa belladonna, which bore small black berries, similar in appearance to small grapes or large black currants, which were alluring and tempting to small children. This botanic garden was surrounded by a fence three feet high, with a rustic gate, held in position by a wire loop, which could easily be opened by children. There was no warning posted, and the respondent's boy of seven ate some of these berries, which were very poisonous, and died. The decision is interesting,

because five of the several members of the House of Lords individually give their ideas, among them Lord Sumner, who said the city authorities knew that these berries were a deadly poison, but took no precautions to warn children who frequented the playground adjoining, and this constituted a trap, and, in the case of a child too young to be capable of contributory negligence, it may impose full liability on the owner. This English case presents clearly a death trap, and there is no doubt in the mind of this court that the case at bar does not present the elements of a trap, nor an attractive nuisance.

In the case of *McFarlane v. City of Niagara Falls*, 247 N. Y. 340, 57 A. L. R. 1, Chief Justice Cardozo said: "Nuisance as a concept of the law has more meanings than one. The primary meaning does not involve the element of negligence as one of its essential factors."

It has been held that nuisance is a violation of an absolute duty, while negligence is failure to use the degree of care required in the particular circumstances—a violation of relative duty; in other words, that a nuisance may be created or maintained with the highest degree of care, and the negligence of a defendant, unless in exceptional cases, is not material. *Herman v. City of Buffalo*, 214 N. Y. 316; *Harper v. City of Topeka*, 92 Kan. 11, 51 L. R. A. n. s. 1032.

In the case of *Stuver v. City of Auburn*, 171 Wash. 76, a ten-year-old boy, while playing about a merry-go-round in the public park of the city of Auburn, inserted a stick into exposed cogwheels while the platform was revolving, with the result that his hand was injured. A demurrer to the petition was sustained, and upon appeal several of the cases involving diving boards, wading pools, and various amusement devices were reviewed, and it was held that a city, in maintaining such a merry-go-round, with exposed cog-wheels, was carrying out its governmental functions, and that the rule of municipal liability for damages should not be extended to include an action of this kind on the theory that it was maintaining a nuisance.

In *Robbins v. City of Omaha*, 100 Neb. 439, a small boy played upon a raft in a pond in Elmwood park, which was as yet undeveloped for park purposes. The little boy fell off of the raft in the water and was drowned. It is held: "A lake in a park, whether artificially formed or not, is not of itself a nuisance. Parks are maintained for the benefit of the public, and a pond or lake adds to the beauty of the park and increases its attractiveness."

When a city maintains an artificial lake in a public park, upon which boat rides may be taken for hire, and such boat upsets and a passenger is drowned, such lake does not constitute a public nuisance, even though weeds and brush may be growing therein along the edges, and stumps be found several feet below the water line.

There being no error in the record, the judgment of the district court is

AFFIRMED.