ELSIE CUNNINGHAM, as Administratrix, etc., of ELAINE JOYCE CUNNINGHAM, Deceased, Respondent, *v.* CITY OF NIAGARA FALLS, NEW YORK, Appellant.

Fourth Department, June 27, 1934.

*Alger A. Williams* [*Manly Fleischmann* of counsel], for the appellant.

*Watts & Findlay* [*Francis T. Findlay* and *Bernard Sax* of counsel], for the respondent.

EDGCOMB, J. Plaintiff's intestate, a girl eight years of age, was drowned on June 8, 1933, while wading or swimming in a pond in one of the public parks in the city of Niagara Falls. She had crossed from one side to the other at least three times, when suddenly she sank beneath the surface of the water for some reason which does not clearly appear. Her body was recovered by Mr. Bissell in water reaching up to his arm pits. Her administratrix has been awarded a verdict against the city upon the theory that decedent's death was occasioned by the negligence of the municipality.

The park in question consisted of a large tract of land, which had been taken over by the city and developed as a recreational center. Gill creek originally flowed through the tract. By cutting down the banks of the creek, and constructing a dam, the city had turned the stream into a lake.

Long before the accident in question, the common council of Niagara Falls had adopted an ordinance forbidding any person to bathe, wade or swim in any park waters in any park in the city, except at such time and in such places as were specifically designated with appropriate signs by the superintendent of parks. No such signs had ever been erected at this lake, and it had never been designated as a place where people might swim or bathe. In fact signs prohibiting the use of the lake for that purpose had been posted sometime previous to the occasion in question, but they had been torn down and destroyed by visitors to the park.

The defendant also employed special watchmen whose duty it was, among other things, to keep people out of the lake.

For some time prior to the tragedy in question the ordinance, like many other laws, had not been strictly enforced, and children were accustomed to bathe in the lake, despite the instructions given to the city watchmen to put an end to such practice. All this was known by the superintendent of parks.

Non-enforcement of the ordinance, however, does not work its repeal, nor affect its validity. (*People* v. *Gardner*, 143 Mich. 104, 109, 110; *Boyd* v. *Ellison*, 248 Mass. 250, 251, 252; *Bates* v. *City of Monticello*, 173 Ky. 244, 250; *Chimene* v. *Baker*, 32 Tex. Civ. App. 520, 525.)

Neither can it be said that, because the superintendent of parks had the right, under the ordinance, to designate this lake as a place

for swimming and bathing, his failure to stop such practice, when he knew full well that it was going on, was tantamount to setting aside this particular body of water for such purpose, or to the erection of signs stating that it might be so used. The ordinance specifically prescribed how bathing in the city parks could be legalized. It could only be done in the manner therein set forth. (*Bandler* v. *Hill*, 84 Misc. 359, 368; affd., 163 App. Div. 970; affd., 220 N. Y. 736.) Acquiescence or tacit consent by the super-intendent of parks to bathing in prohibited waters is not one of the designated methods.

Plaintiff's evidence shows that on the day in question a number of children, including plaintiff's intestate, went to the park to play; some of them had on bathing suits; a city watchman told them that they could not swim at the dam, and ordered them to go farther up the lake, if they wanted to go in bathing. The children obeyed, and went to the place where the drowning took place, and entered the water, without protest on the part of the city officer.

The watchman had no authority to give consent to the decedent to use the lake for bathing purposes, and his act does not bind the city. He could not nullify or suspend the provisions of the ordinance. No such right had been delegated to him. (*Reider* v. *City of Mount Vernon*, 160 App. Div. 418; *McGraw* v. *District of Columbia*, 3 App. Cas. [D. C.] 405; *Chimene* v. *Baker*, 32 Tex. Civ. App. 520, 525.)

Appellant urges that decedent was a trespasser when she entered the water. If that is so, concededly the defendant could not be held liable, because it was guilty of no affirmative act of negli-gence. We deem it unnecessary to decide here whether the child was a trespasser, or a licensee, because, in either event, as we view the case, the city did not violate any duty which it owed her in the premises.

We may assume that the defendant had knowledge of the depth of the lake, and of the general nature of its bottom, and of the fact that children were accustomed to swim at this point. Certainly the maintenance of a body of water in a public park of a depth over the head of small children cannot be said to be a negligent act on the part of the municipality, where swimming or bathing in the lake has been forbidden. No other casualty had ever occurred at this point, and the overwhelming weight of the evidence shows that there was no dangerous condition at the bottom of the lake. Mr. Bissell, who went in the water and brought the decedent out, testified that, as he came out, " it was a gradual slope up," and that " there wasn't anything sudden about it."

In our opinion the city exercised all the care which was required of it in the premises, when it passed the ordinance in question, and when it hired watchmen to see that its edict was enforced. The fact that these officers were derelict in the performance of their duty, or that one of them gave his permission for the decedent to do that which the ordinance forbade, does not change the situation. It is common knowledge that a body of water is an attractive spot to children as well as to grown-ups, especially in hot weather, and it is not strange that the public failed to give strict heed to the decree of the city, which ran counter to their wishes in the matter. We do not think that the city was bound to fence the lake to keep people out of the water. To do so would spoil the beauty of the spot. Besides, it would, in many instances, be an inefficient means of making the lake inaccessible to bathers. Neither did any duty rest upon the municipality to police the lake with such a large force as to make bathing impossible. The cost would be prohibitive. To require the city to do more than it did in this case, or to hold it liable under the facts as disclosed by the record, would, in our opinion, impose an unreasonable burden upon the municipality. One entering a lake or stream to bathe or swim, be he child or adult, assumes certain risks. He cannot rely upon the assumption that it has been made safe for the purpose for which it is being used, in the absence of a representation on the part of the owner to that effect. (*Sickles* v. *New Jersey Ice Co.*, 153 N. Y. 83, 89.)

The park, including the lake in question, was maintained for the sole benefit of the public. The city received no profit or benefit therefrom. The lake did not constitute a nuisance, even though the water at certain points was over the heads of the children who might be playing in the park. Neither can it be said that the municipality failed to perform any duty which it owed to the plaintiff's intestate. We find no liability on the part of the defendant. (*Robbins* v. *City of Omaha*, 100 Neb. 439; *McGraw* v. *District of Columbia*, 3 App. Cas. [D. C.] 405; *Harper* v. *City of Topeka*, 98 Kans. 11; 139 Pac. 1018; *Warren* v. *City of Topeka*, 125 Kan. 524; *St. John* v. *City of St. Paul*, 179 Minn. 12; *Hoffman* v. *City of Bristol*, 113 Conn. 386; 155 Atl. 499; *Toft* v. *City of Lincoln*, 125 Neb. 498; 250 N. W. 748; *Blair* v. *Granger*, 24 R. I. 17; 51 Atl. 1042.)

For the reasons above stated, we think that the judgment should be reversed.

SEARS, P. J., and CROSBY, J., concur; TAYLOR and THOMPSON, JJ., dissent and vote for affirmance; LEWIS, J., not sitting.

Judgment and order reversed on the law and facts and a new trial granted, with costs to the appellant to abide the event.