ETHEL F. LEIDIGH, APPELLANT, V. CITY OF NEBRASKA CITY ET AL., APPELLEES.

292 N. W. 115

FILED MAY 17, 1940. No. 30814.

*Thomas E. Dunbar, Lloyd E. Peterson* and *O. G. Leidigh*, for appellant.

*Varro E. Tyler, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and JOHNSEN, JJ.

MESSMORE, J.

This is a suit in equity to enjoin the city of Nebraska City, having more than 5,000 and less than 25,000 inhabitants, and its mayor and commissioners from making or ordering any payment from the funds of the city for the purchase of certain real estate and for cancelation of a deed to the city, obligating the city to make certain payments aggregating $7,500. The deed expressly stated that no bond, note, promise to pay, or evidence of indebtedness was given or received for said consideration, but the same would be discharged and satisfied by payment to the grantors, or their successors in interest, $500 on January 15, 1939, $500 on July 15, 1939, and $1,000 on July 15 of each year thereafter until a total sum of $7,500 was paid, without interest. The deed further provided that, upon the default of any instalment for six months, title to said real estate should, at grantors' option, revert to grantors, or their successors in interest. There was no other contract or agreement between the grantors and the city than the conditions stated in the deed. The real estate in question consists of 24 acres of land adjoining the driving park in the city. The trial court decreed and adjudged valid the purchase of the real estate as made. From this judgment, plaintiff appeals.

Plaintiff, hereinafter called appellant, alleged in her

amended petition, in substance, that the mayor and city commissioners of the city have pledged, and are attempting by the purchase to pledge, the credit of the city beyond the term of office of said mayor and city commissioners, and that their action in such respect is unlawful and *ultra vires*. Defendants' answer denied such allegations. The court's finding is in substance as follows: That the purchase of said real estate for park purposes is a business or proprietary function of the city, as distinguished from a legislative or governmental function, and the city council has lawful right and authority, from year to year, to make the necessary amounts available in said fund in future years for the payments of said consideration, required by the conditions of the deed to be paid within the time limits specified therein; that the acceptance of the deed by and on behalf of the city was lawful and that the defendants have lawful right and authority to pay the instalments as set forth therein from funds now available, and hereafter to be made available, from the park fund of the city.

Appellant contends that the city is without power or authority to pledge its credit beyond the terms of office of its mayor and commissioners.

Appellees support the purchase on the theory that the acquisition of real estate for park purposes is a business function and not a governmental or legislative function, and cite 1 Elliott, Contracts, p. 883, sec. 603, also cited by appellant, as follows:

"The power of a municipal board to appoint or attempt to appoint officers or to make contracts extending beyond its own term is a question that frequently arises. The power of a board to do this may be either express or implied. It is well settled that the legislature may authorize municipal boards to enter into contracts which will extend beyond their own official term. Whether such board has the implied power so to do depends largely upon the nature of the contract. The distinction has been thus expressed: 'A city has two classes of powers, the one legislative or governmental, by virtue of which it controls its people as their sovereign,

the other proprietary or business, by means of which it acts and contracts for the private advantage of the inhabitants of the city and of the city itself. In the exercise of powers which are strictly governmental or legislative the officers of a city are trustees for the public and they may make no grant or contract which will bind the municipality beyond the terms of their offices because they may not lawfully circumscribe the legislative powers of their successors. But in the exercise of the business powers of a city, the municipality and its officers are controlled by no such rule and they may lawfully exercise these powers in the same way and in their exercise the city will be governed by the same rules which control a private individual or a business corporation under like circumstances.' (Citing *Omaha Water Co. v. City of Omaha,* 147 Fed. 1, 77 C. C. A. 267.)"

"In its capacity as a governmental agency the city is charged with the duty of determining the necessity and the extent and general character of all public improvements, including streets, sewers, public buildings, lighting works, waterworks, and other public works, and of providing for their construction and maintenance; and on its proprietary side it lets contracts for the erection and construction of all public works and carries on many activities of a kind which in a general way resemble those of a private corporation, although everything inures to the benefit of the people. This distinction as to the different capacities in which municipal corporations act is important and is so well grounded as to be a part of the law of the land. *Oliver v. Worcester,* 102 Mass. 489; 1 Dillon, Mun. Corp. (5th ed.) sec. 110; *Covington v. Kentucky,* 173 U. S. 231, 19 Sup. Ct. 383; *State ex. rel. McCurdy v. Tappan,* 29 Wis. 664." *City of Milwaukee v. Raulf,* 164 Wis. 172, 159 N. W. 819.

"The question whether a system of public parks is owned and operated by a municipality in its proprietary or in its governmental capacity is one upon which the authorities are not in agreement. On one side it is said that the use of the park is in kind analogous to those confessedly public. It closely resembles roads and bridges. * * * The enjoyment

of a public park can hardly be restricted to residents of a particular city or town. It cannot be made a source of revenue as may a system of waterworks or sewerage, or gas, electric light, or markets. * * * Historically, the advantages derived from parks never have been treated as proper subjects for private enterprise as have the other functions which, when assumed by the city or town, have been regarded as private. On the contrary, parks, in the proper sense to which the public are regularly admitted, have been inseparably connected with a public agency. The dominant aim in the establishment of public parks appears to be the common good of mankind, rather than the special gain or private benefit of a particular city or town." 19 R. C. L. 763, sec. 68.

There is no doubt that in the instant case the city, by its mayor and commissioners, made the purchase of the real estate for the establishment of a park, or an addition to a park already established, without revenue to be collected from persons using the park. We do not believe that it is contemplated by the authorities that every purchase of real estate by a city is a business or proprietary function. Whether the mayor and city commissioners have the implied power to enter into a contract, such as the one at issue in this case, depends upon the nature of the contract. As heretofore stated, there are distinctions which have been expressed as being two powers; the one, legislative or governmental power, being in the control of its people; the other, proprietary or business power, the latter being the power by which it acts and contracts for the private advantage of its inhabitants. In the case of strictly governmental powers, the city officers or commissioners are trustees, and they may make no grant or contract which will bind the municipality beyond the terms of their office. See *Omaha Water Co. v. City of Omaha, supra.* This was held because they shall not unlawfully circumscribe the legislative powers of their successors. In their exercise, the city is ruling its people and is bound to transmit its powers of government to its successive officers unimpaired. The estab-

lishment and maintenance of public parks have been held by majority rule to constitute an exercise of a governmental or legislative power, as distinguished from the business of a city for private benefit and gain to the city and its citizens. See *Caughlan v. City of Omaha,* 103 Neb. 726, 174 N. W. 220; *Toft v. City of Lincoln,* 125 Neb. 498, 250 N. W. 748.

The agreement in the instant case, expressed by its terms, is an outright obligation on the part of the city to pay the amounts at the various times therein stated. Paragraph 5 of the deed does contain a forfeiture which may be declared upon the breach. The deed, when analyzed, is one providing, first, for conveyance; second, terms of payment; third, security for the payment of the several instalments therein provided. The fact that no bond, note or other evidence of indebtedness is given and received would not relieve the city of its obligation to pay. In the event of default of the agreement, the grantors would have at least two remedies against the city: Enforcement by specific performance, or to declare a forfeiture and recover back the title. Either one of the remedies would be determined by a different administration than the one now serving, depending upon whether or not the city made the payments, as provided by the deed, and, upon its failure to do so, the right of the grantors to exercise the option to declare a forfeiture. This constitutes, without question, a pledge of the credit of the city beyond the respective terms of the mayor and commissioners now in office, and, a governmental or legislative function being here involved, the law expressly denies the mayor and city commissioners such power and authority.

Other assignments of error are stressed, but need not be here discussed.

We conclude the trial court erred. Its judgment is hereby reversed, with directions to cancel and vacate the deed in question.

REVERSED.

CARTER, J., concurs in the result.

JOHNSEN, J., dissenting.

The deed to the city recites that the conveyance is made

for a consideration of $7,500, "for which no bond, note, promise to pay or evidence of indebtedness is given or received, but which will be * * * satisfied" by the making of certain specified payments on the part of the city, and that, if any of such payments is not made, the grantor may declare a forfeiture. The majority opinion declares that this is an attempt to create an outright or absolute obligation on the part of the city that would bind future administrations and that would be enforceable by specific performance.

It seems to me that this construction ignores the plain language of the deed. The instrument provides in express terms that the city has made no promise to pay. There is no obligation to which a future council or commission is committed. There is nothing that can be enforced against the city by specific performance. The deed simply reserves a lien upon the property until the grantor shall have received the sum of $7,500. There is no attempt to obligate any one to make the payments upon which the grantor has conditioned the discharge of his lien. Each council or commission is left free to decide whether it desires to pay the sum provided in the deed for any particular year. If any council or commission decides that it is unprofitable or inadvisable to continue the payments, it is free to discontinue them at any time. The practical effect of each annual payment made is simply to continue the city's right to occupy and use the property for that year.

I have no quarrel with the rules announced in the majority opinion that the acquisition of a public park by a city is a governmental and not a proprietary function, and that, in the exercise of a city's governmental functions, no council or commission, except where statutory or charter authority exists, can create an obligation binding upon future administrations. These rules, however, do not control the present case, because, as I have indicated, no obligation of any character was created against future councils or commissions. Obviously, the transaction by which the city took title to the property was expressly shaped to escape the rule upon which the majority opinion relies. I think it legiti-

mately does escape that rule. The court may not like the method by which the council or commission handled the transaction, but it is not the court's job to administer the affairs of the city. Nor does the court have the right to say that the city ought not to pay a sum as large as the annual payments provided for in the deed, for the mere use of the property, until the last payment has been made, since that, again, is solely for the council or commission to decide.

The council or commission could, in my opinion, legitimately make a contract that gave each future council or commission the option to pay a certain sum annually for the occupancy and use of park property. The fact that the agreement also contained a provision that, after a certain number of payments had been made, title to the property would be vested unconditionally in the city would not change the legal effect of the situation. No actual obligation would exist against any future council or commission, and any payment made, until the last one provided for had been discharged, would, as I have previously indicated, operate in practical effect to continue or extend the city's right to occupy and use the premises for a particular year. Since it was within the power of the city council to enter into such a contract, the court would have no right to concern itself about its wisdom or desirability.