Margaret Agnes **HELGESEN**, as the Administratrix of the Estate of Eric Michael Helgesen, Deceased, and Margaret Agnes Helgesen, Individually, Libellant,

v.

**UNITED STATES of America,**
**Respondent.**

**No. 63 AD 1048.**

United States District Court
S. D. New York.

Nov. 3, 1966.

See also D.C., 262 F.Supp. 382.

Sheldon Tabak, New York City, for libellant.

Robert S. Morganthau, U. S. Atty., by Philip A. Berns, New York City, for respondent.

CANNELLA, District Judge.

Action by plaintiff, administratrix of the deceased, for money damages for pain and suffering and for wrongful death as a result of the alleged negligence of the defendant's vessel, dismissed at the end of the entire case.

The action was commenced by a libel on the admiralty side of the court. Since its commencement, changes in the admiralty rules have been adopted, resulting in changes of procedure and nomenclature.[1]

■ The old concept of sovereign immunity against claims for damages has long been abandoned in the admiralty field. Suits based on admiralty claims may be brought against the United States under various statutes.[2]

■ Coast Guard vessels are public vessels[3] and this court finds it has jurisdiction of this action under 46 U.S.C. § 781[4] et seq., and 28 U.S.C. § 1333[5] "for damages caused by a public vessel of the United States." The liability arising in this case is primarily a tort liability. Thomason v. United States, 184 F. 2d 105 (9th Cir. 1950).

■ The established principle of maritime law is that in the absence of a statute there is no action for wrongful death. The Harrisburg, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358 (1886). Although Congress has enacted legislation providing for actions for wrongful death in a limited number of maritime situations, none

1. 28 U.S.C. Rule 1 (1948), as amended, 28 U.S.C. Rule 1 (Supp.1966). Now the Federal Rules of Civil Procedure apply in their entirety, with stated exceptions, in all admiralty cases.

2. Suits in Admiralty, 41 Stat. 525, 46 U.S.C. § 741 et seq.; Public Vessels Act, 43 Stat. 1112, 46 U.S.C. § 781 et seq.; Federal Tort Claims Act, 63 Stat. 101, 28 U.S.C. § 1346(b) et seq.

3. Geo. W. Rogers Const. Corp. v. United States, 118 F.Supp. 927 (S.D.N.Y.1954), defines a public vessel as one owned absolutely by the United States whose

officers are civil service employees, whose crew is paid by the United States and which is not engaged in transporting cargo for hire.

4. 46 U.S.C. § 781 provides in part that "[a] libel in personam in admiralty may be brought against the United States * * * for damages caused by a public vessel of the United States * * *."

5. This section provides in part that "the district courts shall have original jurisdiction, exclusive of the courts of the States of: (1) [a]ny civil case of admiralty or maritime jurisdiction * * *."

is applicable in the present case.[6] However, if the accident takes place within the territorial waters of a state which has a Wrongful Death Statute admiralty recognizes a death action and applies the Wrongful Death Statute of that State.[7]

█ This accident took place within the territorial waters of New York State which has a Wrongful Death Statute[8] and the court holds that this case is governed by that statute.

█ The court takes judicial notice of the fact that the Hudson River is a navigable stream at the scene in question and at the area some four miles south of the Poughkeepsie Bridge. The court further finds that the Coast Guard vessel C.G.C. Mahoning was acting within the area and scope of its authority and function.

Based on all of the testimony and evidence adduced at trial the court finds that the credible evidence establishes that on March 11, 1962, at about 1:00 P.M. the deceased, a 12 year old boy in good health, stepped from property owned by a railroad, onto an ice floe, approximately 12 feet by 4 or 5 feet, in the Hudson River, which he intended to ride. The deceased pushed himself out into the Hudson River on the ice floe and began to travel north and west with the current. While he was on the ice floe he had conversations with three older boys whom he knew and who remained on the east bank of the river. These older boys had been hunting and one of them, Cohen, threatened to shoot between the legs of the decedent. At the time his threat was made Cohen pointed a .22 caliber gun in the direction of the deceased on the ice floe and the deceased was aware that the gun was pointed at him. The deceased ran from one end of the ice floe to the other and jumped off. he did not fall off, nor was he thrown off as a result of any swell caused by the cutter. Immediately thereafter the ice floe broke up into 6 or 7 pieces.

The C.G.C. Mahoning was in the vicinity of Buoy A at approximately 1:00 p.m. and was proceeding north at approximately 10 knots per hour toward Poughkeepsie Bridge on an assistance mission. Although there were three men on the bridge and one on the stern with a clear view of the river, none saw any sign of the deceased in the vicinity at that time.

The C.G.C. Mahoning was informed that its assistance was no longer needed and it thereafter came about in the vicinity of the Poughkeepsie Bridge and headed south. When it returned to the vicinity of Buoy A the attention of the crew was attracted by sounds of police sirens and shots, to a crowd gathered on the east bank of the river. It then proceeded to the east bank and assisted in the search for the deceased.

█ The liability of the parties in this type of action is controlled by the New York Death Statute as explained above. Under the New York statute the plaintiff has the burden of proving the defendant's negligence and resulting damages and the defendant has the burden of proving that the plaintiff was contributorily negligent.[9]

The court finds that there has been no showing of negligence on the defendant's part. The vessel was proceeding in an area assigned to it, doing a job assigned to it. The plaintiff has not established any conduct on the defendant's part which could reasonably be construed as being negligent. There was no evidence that the cutter was not properly manned, nor was there any evidence that the per-

6. The Jones Act, 41 Stat. 1007, 46 U.S.C. § 688, is not applicable because the decedent is not a seaman. The Death on the High Seas Act, 41 Stat. 537, 46 U.S.C. § 761 et seq. does not apply because the incident occurred within the territorial waters of New York State.

7. Western Fuel Co. v. Garcia, 257 U.S. 233, 42 S.Ct. 89, 66 L.Ed. 210 (1921);

The Tungus V. Skovgaard, 358 U.S. 588, 79 S.Ct. 503, 3 L.Ed.2d 524 (1959); Hess v. United States, 361 U.S. 314, 80 S.Ct. 341, 4 L.Ed.2d 305 (1960).

8. N.Y.Dec.Estate Law, McKinney's Consol. Laws c. 13, § 130 et seq. and N.Y.Dec. Estate Law § 119 et seq.

9. N.Y.Dec.Estate Law § 131.

sonnel did not conduct themselves in a proper manner. Moreover, there was no showing that the vessel was travelling at an excessive rate of speed causing swells of such a nature as to constitute negligence. Further, there was no showing that the swell of the cutter caused the ice floe to break. Contrarywise, there was evidence that the decedent jumped off the ice floe. The court finds that the deceased's conduct was triggered by the pointing of the gun by Cohen. Neither Cohen, nor the third eye witness was called, nor was either of their depositions offered by either side. The court finds a complete failure of proof of any negligence of the defendant by the plaintiff.

The deceased, on the other hand, had been warned about the perils of riding ice floes on the river just the day before. The witness Sotanski testified that while he assayed riding one of the ice floes he thought better of it and did not. However, the court recognizes that Sotanski was 15 years old and the deceased was only 12. The court in evaluating the deceased's conduct, applies to it the norm of the reasonable conduct of a boy of his age, educational background and experience.[10]

■ Applying such a standard the court finds that the plaintiff was guilty of contributory negligence in riding an ice floe in the Hudson River under the circumstances then existing. He had lived in the area some years, had been to the river before and was a good swimmer. He could easily see, or should have seen, that ice floes were going upstream and over toward the west side of the river and he knew, or should have known, that this would carry the ice floes over deep Hudson River water. The court finds the deceased's conduct was negligent and that it was the proximate cause of his predicament.

Even assuming arguendo, that the deceased's conduct was not negligent, the conduct of Cohen cannot be charged to the defendant. The court finds that the proximate cause of the decedent going into the river was not any swell caused by the cutter. The deceased jumped into the river.

Since the court finds that there was no negligence on the part of the defendant and that there was contributory negligence on the part of the plaintiff, there need not be any discussion as to the question of damages.

The action by the plaintiff, Margaret Agnes Helgesen, individually, is dismissed on the same grounds, viz., failure to prove any negligence on the part of the defendant.

This opinion represents findings of fact and conclusions of law.

So ordered.

10. See: Sickles v. New Jersey Ice Co., 153 N.Y. 83, 46 N.E. 1042 (1897); Tucker v. New York Central and Hudson River R.R. Co., 124 N.Y. 308, 310, 26 N.E. 916 (1891); Albert v. City of New York, 75 App.Div. 553, 78 N.Y.S. 355 (1st Dept. 1902).