(115 App. Div. 739)

### SWARTS v. R. M. WILSON MFG. CO.

(Supreme Court, Appellate Division, Fourth Department. November 14, 1906.)

1. MASTER AND SERVANT—INJURIES TO SERVANT—MASTER'S DUTY—SAFE APPLIANCES—QUESTION FOR JURY.

In an action for injuries to a servant owing to his having been struck by a piece of wood thrown from knives arranged on spindles, which revolved toward him as he tended a wood-cutting machine, there being evidence that the operation of the knives in such manner was more dangerous to the operator than when the spindles revolve outwardly, it was a question for the jury whether defendant had furnished a reasonably safe appliance.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, § 1017.]

2. SAME—ASSUMPTION OF RISK.

Where an experienced servant complained on Monday of the manner in which the machine he tended was operated, and the master promised to remedy the matter on the following Saturday, and he was injured in the meantime owing to the condition complained of, he did not assume the risk.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, §§ 638–644.]

3. EVIDENCE—OPINION EVIDENCE—SUBJECTS OF EXPERT TESTIMONY.

In an action for injuries to a servant, it appeared that plaintiff tended a machine consisting of a table, near the middle of which were two spindles, projecting above the surface of the table, and bearing knives; that the spindles revolved rapidly toward plaintiff, whose duty it was to place pieces of wood in a "form" so that it could be cut by the knives; and that a piece of wood was broken off and thrown against plaintiff by the revolving knives. Held that, in view of the character of the machine, it was proper to admit expert testimony to the effect that it would have been less dangerous had the spindles revolved outwardly.

[Ed. Note.—For cases in point, see vol. 20, Cent. Dig Evidence, §§ 2319, 2320.]

Nash and Williams, JJ., dissenting.

Appeal from Trial Term, Oneida County.
Action by Charles E. Swarts against the R. M. Wilson Manufactur-

ing Company. From a judgment in favor of plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

The action was commenced on the 4th day of January, 1905, to recover damages for injuries sustained by the plaintiff while in defendant's employ, alleged to have been caused solely through its negligence.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, NASH, and KRUSE, JJ.

Frederick G. Fincke, for appellant.

Frank C. Sargent, for respondent.

McLENNAN, P. J. The defendant is a corporation engaged in manufacturing bath room supplies at the city of Rome, N. Y. On the 18th day of December, 1902, the plaintiff was in defendant's employ engaged in operating a machine called a "shaper," consisting of "a metal table, near the middle of which and about 3 feet apart are two heads, or spindles, about 1⅝ inches in diameter, which project up 6 or 8 inches above the surface of the table. Upon each spindle are fastened two knives. The spindles revolve very rapidly, and the edge of the wood to be shaped is pressed against the knives by the operator. The operator puts the piece of wood to be shaped on a 'form,' which has spurs on it and a cleat across the back to hold the wood more firmly, and puts the form with the wood on it under a spring guard which prevents the wood from flying upward and the hands of the operator from going against the knives, being careful to cut with the grain. The fact that it is necessary to cut with the grain makes two spindles, instead of one, desirable, for after the workman has shaped it part way around on one spindle he can change to the other and finish it there."

The machine in question was set up and was being operated in such manner that the two spindles and the knives upon each revolved inwardly and toward the operator standing in front of the machine, instead of outwardly and away from him. It is claimed, and the evidence tends to show, that a large piece of wood was broken from the tank top which the plaintiff was shaping; that it was thrown against the opposite revolving spindle, and by it thrown against the plaintiff, striking him in the abdomen with great violence and causing the injuries complained of. There is also evidence tending to establish the proposition that the operation of such machine when the knives revolved inwardly is attended with more danger to the operator than when made to revolve outwardly. It also appears that with comparatively little trouble, and practically without cost, such machine could have been changed so that the knives would have revolved outwardly, and that it still would have done its work quite as satisfactorily, and that its efficiency would have been in no manner impaired. Concededly the operation of the machine in question, when being conducted in the safest manner known, was attended with great danger. But the plaintiff was fully aware of such danger, and he also knew of the increased danger in operation resulting from the fact that the knives revolved inwardly. There is no suggestion in the evidence that the machine was not perfectly constructed, or that at the time of the accident all of its parts were not in perfect condition; the only com-

plaint being that it was wrongly set up and in such fashion as to cause additional danger in its operation.

Upon these facts, and independent of any other question, we think clearly it was for the jury to say whether or not the defendant had furnished to the plaintiff a reasonably safe appliance with which to work. If a machine is defective in any of its parts, and is known so to be by the master, he is guilty of negligence if he permits a servant to use the machine without fully informing him of such defect. We think that, if a machine is not defective in any of its parts, but is being operated in an improper manner and so as to increase the danger attendant upon its operation, the same rule applies. The simplest and safest machine might become exceedingly dangerous if its parts were improperly adjusted, and a defect in the adjustment of the parts constitutes a defect in the machine quite as much as if the parts themselves were defective, and, if an employé is injured as a result of such improper adjustment, which is known to the master and which is not known to the employé, the master would be liable.

The plaintiff was an experienced machinist, had been in defendant's employ and engaged in operating the machine in question for a considerable time prior to the accident. He knew and fully appreciated the dangers attending the operation of such machine, knew that the machine in question was being operated in a manner which unnecessarily increased such danger; that is, he knew that it had been set up improperly and that it was being operated improperly. Of course, under such circumstances, unless something occurred which relieved the plaintiff from the assumption of risk, there could be no recovery.

The plaintiff testified in this case that on the Monday previous to Thursday, the day on which the accident occurred, he made complaint to the defendant because the machine was being operated so that the knives revolved inwardly, and stated, in substance, that such manner of operation largely increased the danger to him, and threatened to leave defendant's employ unless such manner of operation was changed, to wit, unless the machine was so adjusted that the knives would revolve outwardly; that the defendant then and there promised that, if the plaintiff would continue in its employ, the defendant would make the change the following Saturday. And the plaintiff states that because of such promise he remained in defendant's employ. The accident, as we have seen, occurred on Thursday, two days before the time arrived when the defendant had promised the change would be made. It is claimed that under these facts the plaintiff was relieved from all assumption of risk, and that, if the accident occurred through defendant's negligence, and the plaintiff himself was free from contributory negligence, he may recover solely because of such promise.

It seems to me that such is the only logical meaning of the decision in Rice v. Eureka Paper Company, 174 N. Y. 385, 66 N. E. 979, 62 L. R. A. 611, 95 Am. St. Rep. 585; and that it would not be useful for this court to attempt by some finespun theory to distinguish the case at bar from that case. Besides, the Appellate Division, Second Department, has interpreted the meaning of the decision in that case as contended

for by respondent's counsel. Citrone v. O'Rourke Engineering Construction Co., 113 App. Div. 518, 99 N. Y. Supp. 241. In that case the plaintiff was set to work in a trench about 8:30 o'clock in the forenoon. He complained to the master that the trench was an unsafe place in which to work because stones above him in the trench were liable to fall upon him. He was told by the foreman in charge of the work "to go to work, and after dinner he would fix it." Plaintiff went to work induced by the promise, and the stones fell on him about 10:30 o'clock, and he sustained the injuries for which he complained. It was held that:

"A master may contract to relieve a servant permanently or for a limited time from the risk of the employment. A promise by the master to repair a dangerous defect, made to the servant to induce him to continue work, constitutes such a contract for the period set by the agreement, and the master, not the servant, assumes the risk."

In other words, it was held that the assumption of the risk by the master begins at the time of making the agreement and continues until after the time when it was agreed that the repairs should be made. In that case, as we have seen, the promise was made at 8:30 o'clock, and was that the repairs would be made after dinner, and the accident occurred at 10:30, several hours before the time arrived when the promise was to be fulfilled. In the case at bar, the promise to repair was made on Monday, and was to the effect that the repairs would be made on Saturday following. The accident occurred on Thursday intervening. The facts of the two cases, so far as the principle involved is concerned, cannot be distinguished. The question of plaintiff's contributory negligence was clearly for the jury.

It is also claimed by appellant's counsel that the court below committed reversible error in permitting four witnesses to express the opinion that the manner in which the machine in question was being operated at the time of the accident increased the danger incident to its operation over what it would have been had the knives revolved outwardly; the claim being that that question was not properly the subject of expert testimony. It seems to me that the evidence was properly admitted, and that the authorities cited by respondent's counsel fully sustain that proposition. The machine in question was of such a character that it is somewhat difficult to understand how it became more dangerous because of the fact that the knives revolved inwardly rather than outwardly. In fact, I confess that, after all the discussion had by counsel upon that question, I am at loss to see how it is so. But the machinists sworn on behalf of the plaintiff and defendant alike seem to agree that to operate the machine with the knives turning inwardly was attended with much more danger than if they revolved the other way. Under those circumstances we think it was competent for the expert witnesses to say just that.

We think the evidence very clearly justified the conclusion that the defendant's negligence in setting up and operating this machine in the manner in which it did was the proximate cause of the accident; that, if it had been set up in the other way, such accident would not have happened.

100 N.Y.S.—67

The only interesting question presented by this appeal is: Does a master who permits or directs an employé to operate a defective machine, when such defect is known to the employé, and the attendant danger is fully understood and appreciated, become liable for injuries sustained by the employé because of such defect, and solely because the master promised to remedy the defect at a certain time, and where the accident resulting in the injuries complained of occurred prior to the time when it was promised such defect would be remedied? Our answer is in the affirmative. We think such is the logical conclusion to be drawn from the decision in the Rice Case, supra, and clearly such was the interpretation given to it in the case of Citrone v. O'Rourke Engineering Construction Co., supra.

It is concluded that the judgment and order appealed from should be affirmed, with costs.

Judgment and order affirmed with costs. All concur, except WILLIAMS and NASH, JJ., who dissent.