VICTORIA G. CLARK, as Administratrix of the Estate of JOHN CLARK, Deceased, Respondent, *v.* ICELAND STEAMSHIP COMPANY, LTD., Appellant, et al., Defendant.

First Department, November 25, 1958.

*Patrick E. Gibbons* of counsel (*Oscar A. Thompson* with him him on the brief; *Galli & Locker*, attorneys), for appellant.

*Edward J. Behrens* of counsel (*Gay & Behrens*, attorneys), for respondent.

McNALLY, J. In this action to recover damages for the death and injuries of the plaintiff's intestate, defendant-appellant appeals from a judgment entered on a total verdict of $77,500 — $58,500 in the cause of action for death, and $19,000 in the cause of action for personal injuries. We conclude that the admission of opinion evidence and the failure to charge on a material element of liability constitute prejudicial error and require reversal.

The complaint and bill of particulars allege that the defendant-appellant's ship was unseaworthy and that appellant failed to furnish plaintiff's intestate a safe place to work. The evidence establishes that on October 29, 1954, the steamship *Tungufoss*

was at Pier 20, East River. The vessel was separated from the dock about six or eight feet by floats. The decedent, one of a gang of longshoremen, came aboard to remove pontoon hatch covers and to load cargo. The hatch covers were stowed three high between the hatch coamings and the ship's rail. The decedent while walking on top of the stowed hatch covers slipped and fell into the water. It is alleged that the decedent's injuries and death resulted from the said occurrence.

Plaintiff introduced, over appellant's objection, expert testimony to the effect that the absence of a lifeline between the stowed hatch covers and the ship's rail rendered the vessel unseaworthy. Seaworthiness is generally a jury question. (*Mahnich* v. *Southern S. S. Co.*, 321 U. S. 96, 98; *Walsh* v. *Washington Marine Ins. Co.*, 32 N. Y. 427, 431.) Where it appears that the owner has furnished an unseaworthy appliance, such as a defective rope supplied by a mate for use in rigging a staging (*Mahnich* v. *Southern S. S. Co., supra*), and it is uncontradicted that the rope is defective, then the vessel is unseaworthy as a matter of law. In the case at bar, resolution of the issue of seaworthiness depended on whether the construction of the appellant's vessel afforded adequate space for the proper stowing of the hatch covers between the hatch coamings and the ship's rail and, in addition, sufficient deck passageway for the longshoremen. Generally speaking, opinion evidence of an inference or judgment as to the ultimate fact to be determined by the jury is excluded. (*Harley* v. *Buffalo Car Mfg. Co.*, 142 N. Y. 31, 37–38; *Jean* v. *Algonquin Hotel Co.*, 255 App. Div. 279; *People* v. *Polstein*, 184 App. Div. 260, affd. 226 N. Y. 593; 32 C. J. S., Evidence, § 526.) The expert testimony to the effect the *Tungufoss* was unseaworthy carried the implication that the ship owner was negligent and failed to exercise reasonable care to provide the decedent a safe place to work.

In the instant case, opinion evidence was inadmissible as to the adequacy or inadequacy of the construction of the *Tungufoss*, the determination of which was within the competence of the jury upon the submission to it of the relevant facts, such as the dimensions of the vessel and the hatches, and evidence of the space necessary for the proper stowage of the hatch covers and passageway. Under the circumstances, expert testimony might well have been elicited as to the custom and practice in the stowing of hatch covers under similar conditions. (*Garthe* v. *Ruppert*, 264 N. Y. 290, 296.) The admission of expert testimony with reference to custom and practice would leave the jury free to determine on all the evidence the ultimate issues of whether or not the appellant had furnished the decedent a safe place to

work and whether or not the appellant's vessel was seaworthy. Thus, there would be present a cause within the first class of cases adverted to in *Dougherty* v. *Milliken* (163 N. Y. 527) wherein the expert states facts which, with the other proof, enables the jury to draw its own conclusions. (*Roberts* v. *New York Elev. R. R. Co.,* 128 N. Y. 455, 473; *People* v. *Polstein, supra,* p. 263; *Blind* v. *Rochester Aeronautical Corp.,* 273 App. Div. 1056, 1057.)

There are two classes of cases in which expert testimony is admissible. In one instance, the facts are to be stated by the expert and the conclusion drawn by the jury. In the other, the expert states the facts and gives his conclusion in the form of an opinion. (*Dougherty* v. *Milliken, supra.*) In the *Dougherty* case, the negligence charged was that a certain eyebolt was insufficient to securely hold two derricks and that the breaking of the eyebolt caused one of the derricks to fall resulting in injuries to the plaintiff. The court there stated (p. 535) that the facts in regard to the construction and the sufficiency of the derricks could easily have been described to the jury and thus enabled them to form a conclusion as to the charge of negligence. At page 536, the court said: " After having these placed before them, the jury would have been quite as competent to answer this question as the experts."

The admission or rejection of expert testimony has frequently been passed upon by the courts of this State. Although the fundamental rules are clear and well settled, their application to particular fact situations is a considerable source of difficulty. The general rule is that where the subject of the inquiry is of such technical nature that a proper conclusion from the facts depends upon professional or scientific skill, qualified experts may express their opinion as to the proper inference to be drawn from a given set of facts. Such expert opinion is most frequently admitted upon subjects requiring a knowledge of medicine or surgery but is not limited to that class alone. (Richardson, Law of Evidence [8th ed.], § 387.)

To illustrate, it has been held that expert testimony is admissible as to factors which may give rise to foreseeable risk of injury incident to the kind of rope used for a handrope in the operation of a dumbwaiter of a tenement house (*Levine* v. *Blaine Co.,* 273 N. Y. 386); to the phenol content of thyme oil (*Gutkind* v. *Lueders & Co.,* 267 N. Y. 320); whether a proper method had been adopted in constructing a trench for the purpose of underpinning or supporting the foundation of a chimney (*Finn* v. *Cassidy,* 165 N. Y. 584); whether or not cabinet work was well done (*Ward* v. *Kilpatrick,* 85 N. Y. 413); whether it

was customary to have gates of any kind on drawbridges (*Hart v. Hudson Riv. Bridge Co.,* 84 N. Y. 56); the adequacy of a heating plant (*Delair v. Gaudet,* 4 A D 2d 736); the value of land (*Hazard Lewis Farms v. State of New York,* 1 A D 2d 923); that gasoline vapor would ignite without some source of ignition (*Bailey v. Bethlehem Steel Co.,* 277 App. Div. 798, affd. 302 N. Y. 717); the results of a patch test of a substance used by defendants in the treatment of the plaintiff (*Qualtieri v. Ferraro,* 270 App. Div. 1067); the fact that a taxicab was operated at an excessive speed by reason of the skidmarks resulting from the application of four wheel brakes (*Saladow v. Keystone Transp. Co.,* 241 App. Div. 161); the improper set up of shaping machinery (*Swarts v. Wilson Mfg. Co.,* 115 App. Div. 739, 743–744); whether or not a proper method had been adopted in installing and maintaining electrical wires in a building (*German Amer. Ins. Co. v. New York Gas & Elec. Co.,* 103 App. Div. 310, 315).

On the other hand, it has been held that experts would not be permitted to testify whether a bullet wound was self-inflicted (*People v. Creasy,* 236 N. Y. 205); whether a worn condition of the front wheel of a car plus a spreading of the railroad track might cause a derailment (*Schutz v. Union Ry. Co.,* 181 N. Y. 33); whether more than one attendant was necessary to adequately supervise a playground (*Storms v. City of Fulton,* 263 App. Div. 927); how many men were necessary to erect a telephone pole with safety (*Hall v. New York Tel. Co.,* 168 App. Div. 396); which creates a greater danger, running three boards through a saw or running one board through a saw (*Carron v. Standard Refrigerator Co.,* 122 App. Div. 296).

In the case at bar, expert testimony to the extent and in the form adduced was unnecessary either to convey the facts to the jury or to enable them to arrive at a determination as to negligence or seaworthiness. The relevant factual data were within the ken of the experience, observation and knowledge of laymen. In such case expert testimony in the form received was inadmissible. (*Meiselman v. Crown Heights Hosp.,* 285 N. Y. 389, 396; *Noah v. Bowery Sav. Bank,* 225 N. Y. 284, 292; *Schneider v. Second Ave. R. R. Co.,* 133 N. Y. 583, 589; *Aubry v. Ashland Realty Co.,* 255 App. Div. 205, 208.)

The cases relative to opinion evidence on nautical matters are inapplicable. They relate to seamanship, navigation, the operation of vessels under storm conditions and similar factual situations which involve application of a body of experience and knowledge to a situation incapable of being adequately conveyed to a jury of laymen. (*The "City of Washington",* 92 U. S. 31,

39; *Transportation Line* v. *Hope,* 95 U. S. 297; *Walsh* v. *Washington Marine Ins. Co.,* 32 N. Y. 427, *supra*; *Price* v. *Hartshorn,* 44 N. Y. 94, 102.) Here involved are simple factual questions and their resolutions was for the jury.

Furthermore, the record does not establish improper construction of the appellant's vessel. The testimony of plaintiff's expert as to the vessel's length and beam was hearsay; there was no testimony as to the dimensions of the hatches. Assuming, therefore, that the hatch covers were stowed properly, there were not before the jury the facts necessary to support a finding of inadequate passageway because of improper construction. The sole remaining basis for recovery was that the proper stowing of the hatch covers by Despatch Terminal Corporation, an independent contractor, by whom decedent was employed, had deprived the plaintiff's intestate of reasonable passageway on the deck of the *Tungufoss* and to that extent the appellant had not furnished the decedent a safe place to work; in that regard appellant's measure of liability was reasonable care. (*Atlantic Transp. Co.* v. *Imbrovek,* 234 U. S. 52, 63; *Baltimore & Ohio R. R. Co.* v. *Baugh,* 149 U. S. 368, 386; *Aurigemma* v. *Nippon Yusen Kaisha Co.,* 238 N. Y. 183, 187.) However, the court's charge on the question of negligence was inadequate and constituted reversible error since it did not properly define the appellant's duty in regard thereto; the charge did not inform the jury that a predicate for such liability was knowledge actual or constructive of the condition complained of on the part of the appellant. (*Aurigemma* v. *Nippon Yusen Kaisha Co., supra*; cf. *Diocca* v. *New York Dock Co.,* 264 App. Div. 895.) "Negligence implies notice." (*Hirsch* v. *Radt,* 228 N. Y. 100, 105.)

Defendant-appellant contends that an action for wrongful death caused by unseaworthiness may not be maintained under section 130 of the Decedent Estate Law. Section 130 authorizes the maintenance of an action to recover for wrongful death resulting from a "wrongful act, neglect or default". It is unquestioned that appellant would have been liable to the decedent for the unseaworthiness of the *Tungufoss* if death had not ensued. The question posed is whether such a claim is within the purview of section 130 or, more specifically stated, whether liability grounded on unseaworthiness is one for a "wrongful act, neglect or default". We are of the opinion that the said cause of action is within the purview of section 130 of the Decedent Estate Law. (*Halecki* v. *United N. Y. & N. J. Sandy Hook Pilots Assn.,* 251 F. 2d 708; *Skovgaard* v. *M/V Tungus,* 252 F. 2d 14; *Greco* v. *Kresge Co.,* 277 N. Y. 26.)

We find it unnecessary to pass on the alleged excessiveness of the verdict in view of the disposition here made.

The judgment should be reversed on the law and a new trial directed, with costs to abide the event.

RABIN, J. P., M. M. FRANK, VALENTE and STEVENS, JJ., concur.

Judgment unanimously reversed on the law and a new trial ordered, with costs to abide the event.