Mrs. Barbara Jean HORNSBY, Individually and as guardian of minor, Jennifer Leigh Hornsby, and as Administratrix of Estate of Roy E. Hornsby

v.

The FISHMEAL COMPANY and Gulf Menhaden Company, Inc., and Firemen's Fund Insurance Company, Intervenor.

Jeraldine Fruge WILLIAMS, Individually and as Tutrix of Minors, Charles Edward Williams III, Michael Roy Williams, and Kim Lee Williams

v.

LOUISIANA MENHADEN COMPANY, Inc., Wallace-Menhaden Products, Inc., Associated Aviation Underwriters, and United States Fidelity & Guaranty Company, Intervenor.

GULF MENHADEN COMPANY, Inc. and United States Aviation Underwriters, Inc.

v.

WALLACE–MENHADEN PRODUCTS, Inc., Louisiana Menhaden Company, Inc., and the American Insurance Company.

Civ. A. Nos. 12745, 12843, 13090.

United States District Court
W. D. Louisiana,
Lake Charles Division.

June 5, 1968.

As Amended June 10, 1968.

No. 12745: Jones & Jones, Cameron, La., Fromkin & Fromkin, Omaha, Neb., for plaintiffs.

Hall, Raggio, Farrar & Barnett, Lake Charles, La., for defendants.

Plauché & Plauché, Lake Charles, La., for intervenor.

No. 12843: Payton R. Covington, Lake Charles, La., for plaintiffs.

Christovich & Kearney, New Orleans, La., for defendants.

Hall, Raggio, Farrar & Barnett, Lake Charles, La., L. B. Ullstrom, Denver, Colo., for intervenor.

No. 13090: Hall, Raggio, Farrar & Barnett, Lake Charles, La., L. B. Ullstrom, Denver, Colo., for plaintiffs.

Christovich & Kearney, New Orleans, La., for defendants.

EDWIN F. HUNTER, Jr., District Judge.

These cases concern a midair collision of two light aircraft. The collision occurred over the Gulf of Mexico within one marine league of the Louisiana shore at approximately 6:50 P.M. on July 25, 1966. At the time of the collision the weather was clear. The visibility and ceiling were unlimited, and the wind was calm. As a result of the impact, both planes and the pilot of each crashed into the Gulf near the Louisiana shore. There were no survivors.

Early each morning these fish-spotting pilots take off from landbased fields near the Menhaden factories in Cameron, Louisiana. They fly out to sea and scan the Louisiana and Texas coastal waters to locate schools of fish. When a pilot spots fish he radios the boats of his company. These boats proceed, under the directions of the pilot, to the scene. The pilots direct the maneuver of the large boats to the fish and the purse boats as to when to circle, let out nets, drop nets, etc.

The plaintiff in No. 12745 is Mrs. Barbara Jean Hornsby, who seeks to recover damage for the death of her husband, Roy Hornsby. The defendant is The Fishmeal Company, the owner and operator of the plane which was being operated by Charles Williams. The plaintiff in No. 12843 is Mrs. Geraldine Fruge Williams, who seeks to recover for the death of her husband, Charles Williams; the defendant is Louisiana Menhaden Company, Inc., the owner and operator of the plane which was being operated by Roy Hornsby. The third suit involves a property claim for the value of the aircraft.

Candor requires agreement that we do not know, for sure, what happened. We shall never know. There is no clear, positive and decisive answer. The two pilots are dead. There was one eye witness, but his testimony is inconsistent and of little value. He was on one of the fishing boats far below. The Court's duty is to select from the conflicting inferences and conclusions those which I consider most reasonable. Each side argues with vigor that this tragedy was caused solely and exclusively by the negligence of the other. Mrs. Hornsby insists that under 14 C.F.R. 91.67E her husband had the right-of-way whether he was descending, ascending, or in a fixed orbit. This is true, she says, because her husband's aircraft was being "overtaken," and that a pilot in an *overtaking* aircraft must alter course to the right to pass well clear. Mrs. Williams asserts, among other things, that the sole cause of this accident was the patent negligence of Hornsby. Her counsel refers to Hornsby as "the Red Baron diving from the Western sun."

We will make specific findings, but before doing so, perhaps it is appropriate to comment on the confident assertion made by each defendant: "Judge, surely our opponents have not proven any negligence on our clients." There is some merit in this contention. If we accepted it, we would just dismiss all law suits and let it go at that. However, it defies common sense and understanding to believe that two small planes could crash in midair (right wing to right wing) without someone being at fault. We discard at the outset the proposition that no one was at fault. One or both were at fault.

In line with the recognized principle that, in the absence of any statute to the contrary, the general rules governing tort liability and negligence apply in aircraft accident cases,[1] the courts have determined the issues of liability, by the ordinary rules of negligence and air traffic regulations.[2] We proceed to findings of

1. United States v. Schultetus (5th Cir.) 277 F.2d 322, 86 A.L.R.2d 375. Annotation: 74 A.L.R.2d 615, 75 A.L.R.2d 858, 868; 76 A.L.R.2d 1070, 86 A.L.R. 2d 384.

2. The duties imposed by the Civil Air Regulations have the force and effect of law. Federal Crop Insurance Corp. v. Merrill, 322 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10.

fact and the issues of negligence and causation.

### FINDINGS OF FACT

1. The midair collision occurred on or about July 25, 1966 within the territorial waters of the State of Louisiana at approximately 6:50 P.M. o'clock.

2. At all pertinent times Charles Williams was the pilot and sole occupant of The Fishmeal Company airplane, being a Piper Model PA–18A, hereafter called the Williams plane.

3. At all pertinent times, Roy E. Hornsby was the pilot and sole occupant of the Louisiana Menhaden Piper plane, hereinafter referred to as the Hornsby plane.

4. At all times pertinent, Hornsby and Williams were in the course and scope of their employment as pilot fish spotters with their respective companies who were in competition with each other. On the aforesaid date, time and place, the planes collided in midair, right wing to right wing. The aircraft and pilots crashed into the sea. The pilots were killed.

5. We find that Hornsby was negligent in five respects, as follows:

A. He violated 14 CFR 91.65(a) in operating his aircraft "so close to another aircraft as to create a collision hazard."

B. He violated 14 CFR 91.67(d) in failing to alter his course to the right when approaching the Williams aircraft head-on, or nearly so.

C. In failing to communicate with the other pilots in the vicinity and telling them that he was going to descend to 2,000 feet.

D. In neglecting to answer the radio calls of Mike Boyette and Cecil Ugas on the VHF radio.

E. He knew or should have known that the greatest likelihood of an accident would come from the precise direction that Williams was flying (into the sun). He should have anticipated this possibility and should have

made a thorough surveillance of that area his prime concern.

6. Each of the above recited acts of negligence by Roy Hornsby was a proximate cause of the collision and contributed to it to the extent of 50%.

7. We find Roy Williams negligent in six respects as follows:

A. He knew that Hornsby was to be reckoned with. He had contacted his chief pilot, Cecil Ugas, who was in the area, by intra-company radio, requesting that Hornsby be advised that he, Williams, was in the process of taking over the 2000-foot level. This message was never transmitted to Hornsby and Williams was never cleared to the 2000-foot level of altitude. Williams' aircraft, unlike all others involved here, was not equipped with VHF radio. It was for this reason that he could not communicate directly with Hornsby, who, like all the others, had a VHF radio. He was negligent in attempting to take over the 2000 foot level without first getting an affirmance that Hornsby had been advised of the maneuver.

B. His aircraft was not equipped with anti-collision lights which serve to give an added indication to other pilots of the presence of an aircraft in flight.

C. He violated 14 CFR 91.67(d) in failing to alter his course to the right when approaching the Hornsby aircraft head-on, or nearly so.

D. He violated 14 CFR 91.65(a) in operating his "aircraft so close to another aircraft as to create a collision hazard."

E. He was negligent in operating an aircraft without proper and sufficient equipment, in that he had no means of communicating directly with aircraft other than those of his own employer.

F. He knew or should have known that there was a great likelihood that Hornsby was in the precise area and he should have anticipated the possibility

and should have made a thorough surveillance of that area and altitude his prime concern. He obviously did not do this.

8. Each of the above recited acts of negligence of Charles Williams was a proximate cause of the collision and contributed to it to the extent of 50%.

### THE LAW

■■ Tort claims arising out of the collision of land based aircraft on navigable waters within the territorial waters of a state are cognizable in Admiralty. Weinstein v. Eastern Airlines, Inc., 316 F.2d 758 (3rd Cir., 1963). Congress has enacted legislation providing actions for wrongful death in a limited number of maritime situations, but these statutory enactments are not applicable.[3] If, as here, the accident takes place within the territorial waters of a state, Admiralty recognizes and applies the wrongful death action of that state.[4] What this Court said in Grigsby v. Coastal Marine Service, 235 F.Supp. 97, is applicable here:

"Plaintiff strenuously contends that maritime substantive law should be applied and that the State Wrongful Death statute be relegated to the role of remedy. This is precisely the view shared by the dissenters in Tungus. These dissenters have noted their continued disagreement and have specifically reserved their position that Tungus should be overturned (Hess v. United States, 361 U.S. 314, 316, 80 S. Ct. 341, 4 L.Ed.2d 305). We question the present legal import of Tungus, in view of what Mr. Justice Whittaker, who was one of the majority of five in Tungus, had to say in Hess and Goett, 361 U.S. 339, 80 S.Ct. 341, and Goett v. Union Carbide Corp., 361 U.S. [340] 344, 80 S.Ct. 357, 4 L.Ed.2d 341. As we read him in these cases, he expresses his belief that maritime death cases are governed by 'the general federal maritime law as remedially supplemented by the State's Wrongful Death Act.' This brings him close to the position of the four dissenters in Tungus, but it is not our prerogative to predict whether or not Tungus will survive.

"As of this moment, Tungus is the law. What was said there applies with full force here. Judge John R. Brown of the Fifth Circuit has articulately analyzed Tungus:

" 'As of the present moment the principle that musters a working majority can be stated briefly. The right effectively to recover for maritime death depends on a state death statute. The federal admiralty court * * * may enforce these rights. What those rights are depends upon the state statute or, wherever necessary, the construction put upon the state statute by the courts of that state. In this approach the state has the power to incorporate or adopt within its death statute substantive maritime law principles of negligence and unseaworthiness. If it does, then the survivors will recover, as would the decedent, on admiralty principles whether in a state court, a federal diversity civil action, or the admiralty. Otherwise, if the state confines the standard to that for non-maritime common law situations, the admiralty takes the case with all of the limitations and defenses of the right under that interpretation.'

(Emerson v. Holloway Concrete Products Company, 5 Cir., 282 F. 2d 271, at page 282).''

---

3. The Jones Act, 41 Stat. 1007, 46 U.S.C. § 688, is not applicable because the decedent is not a seaman. The Death on the High Seas Act, 41 Stat. 537, 46 U.S.C. § 761 et seq. does not apply because the incident occurred within the territorial waters of Louisiana.

4. Western Fuel Co. v. Garcia, 257 U.S. 233, 42 S.Ct. 89, 66 L.Ed. 210 (1921); The Tungus v. Skovgaard, 358 U.S. 588, 79 S.Ct. 503, 3 L.Ed.2d 524 (1959); Hess v. United States, 361 U.S. 314, 80 S.Ct. 341, 4 L.Ed.2d 305 (1960).

■■ The federal rule in maritime cases is that contributory negligence is not a complete bar but only serves to mitigate damages. Pope & Talbot, Inc. v. Hawn (1953), 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143. It is equally well settled that in an ordinary civil action under Louisiana's wrongful death statute, any contributory negligence on the part of the deceased would be an insuperable bar to recovery of those claiming through him.[5] The Louisiana Law is set forth precisely in Williams v. J. B. Levert Land Co., La.App., 162 So.2d 53, at page 63:

"It is * * * well settled law that any negligence, however slight, on the part of the injured party will bar recovery provided the negligence constitutes a proximate cause of the accident, there being no authority for application of the rule of comparative negligence in this state."

The critical inquiry is: Does the Louisiana Wrongful Death Statute encompass the general maritime law concept of comparative negligence where the basis of the action is negligence arising from a maritime tort on inland waters?[6] Louisiana has its choice. It may apply the substantive law generally applicable to wrongful death cases within its territory, or it may choose to incorporate the general maritime concept of comparative negligence. Goett v. Union Carbide Corp., 361 U.S. 340, 80 S.Ct. 357 (1960); Emerson v. Holloway Concrete Products Co. (5 Cir., 1960) 282 F.2d 271. The Louisiana courts have not spoken on the subject. There is no case in which the Supreme Court of Louisiana, or even a lower court of that state, has held contributory negligence a bar to recovery in a wrongful death action where, as here, the maritime doctrine of comparative negligence would have controlled if death had not ensued.[6a] Any prediction we

5. Dean Prosser criticizes the common law rule barring recovery for contribution but recognizes that "over a period of more than a century only nine American jurisdictions have come to the contrary conclusion, allowing contribution, without legislation." 23 states have statutes permitting contribution to some extent among or between joint tort feasors. Prosser on Torts (3rd Ed., 1964) § 47 pp. 274–275.

6. Art. 2315. Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it. * * *
   The right to recover all other damages caused by an offense or quasi offense, if the injured person dies, shall survive for a period of one year from the death of the deceased in favor of: (1) the surviving spouse and child or children of the deceased, or either such spouse or such child or children; (2) the surviving father and mother of the deceased, or either of them, if he left no spouse or child surviving; and (3) the surviving brothers and sisters of the deceased, or any of them, if he left no spouse, child or parent surviving. The survivors in whose favor this right of action survives may also recover the damages which they sustained through the wrongful death of the deceased. A right to recover damages under the pro-

visions of this paragraph is a property right which, on the death of the survivor in whose favor the right of action survived, is inherited by his legal, instituted, or irregular heirs, whether suit has been instituted thereon by the survivor or not. * * *

6(a). Defendants urge that this statement is too broad, and cite Babin v. Lykes Brothers S. S. Co., La.App., 94 So.2d 715; Tolle v. Higgins Industries, La. App., 25 So.2d 744, and McGuire v. Louisiana Baptist Encampment, La.App., 199 So. 192. Because of the vigor with which the applicability of these cases is pressed, we make reference to them. These are not decisions of the Louisiana Supreme Court but of Louisiana Appellate Courts in 1940, 1946 and 1957. Recovery was denied in McGuire and Babin on the basis of a factual finding that defendants were not proximately negligent. Tolle was reversed by the Louisiana Supreme Court (212 La. 173, 31 So.2d 730 (1947)) and recovery was allowed pegged on a factual finding that defendant was the sole negligent party. The result in each of these cases would have been the same if death had not ensued. Contributory negligence was not a decisive factor. It should be emphasized that it was not until after the Supreme Court of the United States decided Tungus and Goett in 1959 and 1960

make today may be proven wrong by the courts of Louisiana, which alone have the power to render an authoritative interpretation.

The decisions in other jurisdictions are too numerous to discuss in detail. There are many instances in which it has been held that this or that state had or would adopt maritime legal principles.[7] Other cases are to the contrary.[8]

Louisiana is a state with tremendous marine business. At present its financial destiny lies at sea with mineral production. We would wish to leave the disposition of the law question here to a court more at home with the Law of Louisiana. Perhaps while this case is making its way through the Appellate Federal Courts, someone will seek a state adjudication.

Counsel for plaintiffs suggest that a careful reasoning of *Tungus*, *Hess* and *Goett* reveals at least a mandate from the Supreme Court of the United States to the federal courts to apply admiralty law

unless the State Supreme Court has indicated to the contrary or the State Wrongful Death statute clearly provides otherwise. If writing on a clean slate, we might agree. However, Judicial discipline requires we follow the decisions of the United States Courts of Appeal for the Fifth Circuit, and that Court has given us no indication that it so reads these Supreme Court decisions. Emerson v. Holloway Concrete Products Company (5th Cir. 1960), 282 F.2d 271; Kenney v. Trinidad Corporation (5th Cir. 1965), 349 F.2d 832.

Specifically on the precise point involved is the case of Byrd v. Napoleon Avenue Ferry Company, 125 F.Supp. 573 (E.D.La.1954). There, the death occurred on navigable waters within the territorial limits of Louisiana. The District Court, in applying the Louisiana Death Statute, held that contributory negligence was a complete bar to recovery. The case was affirmed by per cur-

that any of us realized that each state has a choice to apply the substantive law generally applicable to wrongful death cases within its territory or to incorporate the general Maritime law of comparative negligence. The Louisiana courts have certainly had no opportunity to pass on this issue since *Tungus*.

7. California: Curry v. Fred Olsen Lines, 367 F.2d 921 (9 Cir., 1966); Louisiana: Grigsby v. Coastal Marine Service, 235 F.Supp. 97 (W.D.La.1964); Maryland: State of Maryland for Use of Smith v. A/S Nabella, 176 F.Supp. 668 (D.C.Md. 1959).; State of Maryland to Use of Gladden v. Weyerhaeuser S. S. Co., 176 F.Supp. 664 (D.C.Md.1959); and Metzger v. S. S. Kirsten Torm, 245 F.Supp. 227 (D.C.Md.1956); New Jersey: United New York and New Jersey Sandy Hook Pilots Association v. Halecki, 358 U.S. 613, 79 S.Ct. 517, 3 L.Ed.2d 541 (1959); Petition of Marina Mercante Nicaraguense, S.D., 248 F.Supp. 15 (S.D.N.Y. 1965); and The Tungus v. Skovgaard, 358 U.S. 588, 79 S.Ct. 503, 3 L.Ed.2d 524; New York: Cunningham v. Rederiet Vindeggen, A/S, 333 F.2d 308 (2d Cir. 1964); Clark v. Iceland S. S. Co., 6 A.D.2d 544, 179 N.Y.S.2d 708 (1st

Dept. 1958) and Olsen v. New York Central Railroad Co., 341 F.2d 233 (2d Cir. 1965); Oregon: Hess v. United States, 361 U.S. 314, 80 S.Ct. 341, 4 L.Ed.2d 305 (1960); South Carolina: Anthony, Adm. v. International Paper Co., 289 F.2d 574 (4th Cir. 1961); West Virginia: Union Carbide Corp. v. Goett, 278 F.2d 319 (4th Cir. 1960) cert. den. 364 U.S. 824, 81 S.Ct. 64, 5 L.Ed.2d 55; Florida: Weed v. Bilbrey (Ct.App.Fla. 1967) 201 So.2d 771.

8. Scott v. Eastern Airlines, Inc., et al (3rd Cir. 1968), 399 F.2d 14; Kenney v. Trinidad Corp. (La.1965), 349 F.2d 832; Hartford Accident & Indemnity Co. v. Gulf Refg. Co. (La.1956), 230 F.2d 346; Byrd v. Napoleon Avenue Ferry Co. (E.D.La.1955), 125 F.Supp. 573, affirmed 227 F.2d 958 (5 Cir. 1955), cert. denied 351 U.S. 925, 76 S.Ct. 783, 100 L.Ed. 1455; Curd v. Todd-Johnson Dry Dock (La.1954), 213 F.2d 864; Mejia v. United States (La.1945), 152 F.2d 686; Truelson v. Whitney Shipping Co. (Tex.), 10 F.2d 412; McManus v. Lykes Brothers S. S. Co. (E.D.La. 1967), 275 F.Supp. 361; Helgesen v. United States (S.D.N.Y.1966), 275 F. Supp. 789.

iam opinion of the Fifth Circuit Court of Appeals (1955), 227 F.2d 958, and certiorari was denied by the United States Supreme Court, 315 U.S. 925, 76 S.Ct. 783. In 1956 the case of Hartford Accident and Indemnity Company v. Gulf Refining Company, was decided by the Fifth Circuit. There, various libels— including wrongful death libels—were filed as a result of an explosion which occurred aboard some barges which were discharging gasoline cargo near Gretna, Louisiana. The District Court, in applying the Louisiana Wrongful Death statute, Article 2315 of the Civil Code, held that the claims brought under that Act were subject to all defenses, including contributory negligence. In commenting upon this holding, the Fifth Circuit Court of Appeals stated:

> "The district court, in applying the Louisiana death statute, LSA–C.C. art. 2315, held that claims brought under that act in admiralty were subject to all defenses against such claims, including contributory negligence, available to a defendant in a suit of law. This is, of course, the general rule. See Graham v. A. Lusi, Ltd., 5 Cir., 206 F.2d 223, and cases cited therein."

Finally, in Kenney v. Trinidad Corporation, 349 F.2d 832 (5th Cir., 1965), the Fifth Circuit Court of Appeals held that the Louisiana Wrongful Death Statute establishes an absolute peremption, not prescription, of a cause of action for one year, and the period cannot be interrupted or continued beyond its term of one year, even though the wrongful death action was a maritime action. The Court stated:

> "The rational basis for The Tungus, The Harrisburg [119 U.S. 199, 7 S. Ct. 140, 30 L.Ed. 358], and this case is a conflict of laws approach. The Court of the forum enforcing a right created under the laws of another jurisdiction must give effect to the right as it is defined in that jurisdiction."

The importance of the *Kenney* case to the present issue before this Court is disclosed in the following language of Judge Wisdom:

> "As Justice Brennan has pointed out, it is a 'strange principle' that requires a court to apply one law to a maritime tort when the injury is fatal and another law when the injury is not fatal. This vagary in the law seems especially indefensible in placing a shipowner in a better position when he is responsible for a seaman's death than when he is responsible for a seaman's injury short of death. Here the seaman's dependents were deprived of the benefits of the maritime doctrine of excusable laches. But, in the present state of the law, it is only by the grace of Louisiana that Kenney's dependents would have any right to bring an action for wrongful death for a maritime tort occurring on navigable waters within Louisiana or within one marine league of its borders. In other cases we have held that the Florida death statute does not allow recovery for death caused by unseaworthiness (Graham v. A. Lusi, Ltd., 5 Cir. (Florida) 1953, 206 F.2d 223) and that there is no recovery if the seaman is contributorily negligent (Byrd v. Napoleon Ave. Ferry Co., E.D.La.1954, 125 F.Supp. 573, aff'd 227 F.2d 958, cert. denied, 351 U.S. 925, 76 S.Ct. 783, 100 L.Ed. 1455)."

It must be emphasized that the Court in the Kenney case recognized its previous position taken in Byrd v. Napoleon Ave. Ferry Co., supra, and did not choose to overrule it.

■ Judicial discipline requires that we follow these decisions of the Fifth Circuit. On the basis of *Byrd, Hartford* and *Kenney* we hold the contributory negligence of Hornsby and Williams

to be an absolute bar to recovery by plaintiffs.[9]

Any time a federal court determines a question of state law not yet determined in the state involved, such determination goes for naught as further precedent when an authoritative state court decision is handed down on the same point. This has happened twice in this circuit on the precise question involved. In Texas, federal courts have twice held that in an action for wrongful death in state territorial waters, contributory negligence was a complete bar to recovery. Truelson v. Whitney and Bodden Shipping Co., 10 F.2d 412; Graff v. Parker Brothers and Co., 5 Cir., 204 F.2d 705. These determinations now go for naught because in 1961 the Supreme Court of Texas in Vassallo v. Nederl-Amerik Stoomv Maats Holland, 162 Tex. 52, 344 S.W.2d 421, held that under the statute comparative negligence rather than contributory negligence was applicable. In Florida, federal courts held on two occasions that under the Florida Death statute the substantive common law and not that of the general maritime law applied in actions for wrongful death of a non-seaman arising out of an accident occurring upon the navigable territorial waters of Florida. See Graham v. A. Lusi Ltd., 206 F.2d 223 and Emerson v. Holloway Concrete Products Co., 282 F.2d 271. These decisions no longer are the law. In Weed v. Bilbrey, 201 So.2d 771 (1967), the District Court of Appeal for the Second District of Florida agreed with Judge Brown's dissent in *Emerson* and held that under the Florida statute the admiralty rule of comparative negligence was applicable.

Counsel for defendants will submit formal judgment in each case.

9. Under the Louisiana statute, the named beneficiaries can bring an action in their own right for damages suffered by beneficiaries by reason of death of deceased, and also the action which deceased had at time of death. In the instant case we are concerned only with the action by the beneficiaries in their own right.

This is so because there is no proof of any pain and/or suffering by the pilots prior to their deaths. The language of 2315 strongly suggests that had plaintiffs proven pain and suffering by deceased that this action "which deceased had at time of death" would have been governed by maritime principles.